Carole Ann THOMPSON

v.

Thomas Callie THOMPSON.

No. 93–292–APPEAL.

Supreme Court of Rhode Island.

June 16, 1994.

Allen Kirshenbaum, Warwick, for plaintiff.

Karen Lynch, Warwick, for defendant.

OPINION

SHEA, Justice.

This is an appeal from an amended interlocutory decision pending entry of final judgment entered in the Family Court in which the trial master granted the wife's complaint and the husband's counterclaim for absolute divorce based upon irreconcilable differences. The husband appeals from the trial master's assignment of property and from the awards of alimony, health insurance coverage, and counsel fees to the wife. The wife also appeals from the property assignment. We affirm in part and reverse in part.

The trial master made the following findings of fact. The plaintiff, Carole Ann Thompson (wife), and defendant, Thomas Callie Thompson (husband), were married on August 23, 1958. The parties had three children, all of whom were emancipated adults at the time of trial. The wife filed a complaint for an absolute divorce based upon irreconcilable differences, and the husband answered and counterclaimed for divorce on the same grounds. The parties' differences led to the irremedial breakdown of the marriage. Testimonial and photographic evidence depicted violence by both parties, and the husband admitted to striking his wife on three separate occasions. The parties testified about the bad conduct of each, the abuse of alcohol by each, and the husband's infidelities during the marriage. Throughout the marriage an upgrading of assets occurred due to the efforts of the husband as a firefighter for the city of Warwick and then as an employee of Griggs & Browne, and the wife as a mother and homemaker.

The trial master awarded the wife 65 percent of the marital assets, including 65 percent of the husband's disability pension from the Warwick Fire Department. He gave the wife the option of selling the marital home, valued at $325,000, and paying the husband

35 percent of the sale proceeds, or staying in the home and paying him $42,339.85. Additionally the court ordered the husband to pay alimony to the wife in the amount of $200 per week for one year and to maintain health insurance coverage for her for five years or until she secures employment which provides it. Lastly the husband was ordered to pay $12,548.18, which represented 65 percent of the wife's attorney's fee.

The husband asserts that the trial master committed five errors of law. His first ground for appeal is that the trial master erred in awarding the wife 65 percent of the marital assets. He asserts that the master considered only the husband's bad conduct in reaching his decision and ignored the other statutory factors enumerated in G.L.1956 (1988 Reenactment) § 15–5–16.1, as amended by P.L.1992, ch. 269, § 2. That statute directs the court to consider "(1) The length of the marriage; (2) The conduct of the parties during the marriage; (3) The contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates; [and] (4) The contribution and services of either party as a homemaker," among other factors. Section 15–5–16.1. The wife also objects to the equitable distribution, arguing that she is entitled to more than 65 percent of the marital estate.

■ The equitable distribution of marital assets is within the discretion of the trial justice. *Stevenson v. Stevenson*, 511 A.2d 961, 964 (R.I.1986); *Wordell v. Wordell*, 470 A.2d 665, 667 (R.I.1984). In reviewing the findings of the trial court, it is not this court's "function to arrive at de novo findings and conclusions of fact based on the evidence presented at trial." *Moran v. Moran*, 612 A.2d 26, 33–34 (R.I.1992) (quoting *Casey v. Casey*, 494 A.2d 80, 82 (R.I.1985)). If the trial master did not overlook or misconceive material evidence, and if he considered all the requisite statutory elements, this court will not disturb the trial court's findings. *Cok v. Cok*, 479 A.2d 1184, 1189 (R.I.1984).

■ The trial master clearly considered all the criteria before dividing the assets and addressed each statutory element. He found that the parties had a marriage of "long duration, although rocky." He concluded that although the husband was a good financial provider, he physically and emotionally abused his wife. However, the trial master did not accept that the wife was without fault in the breakdown of the marriage, specifically finding that she belittled the husband's earning and sexual abilities. He further found that the wife contributed to the increase in marital assets and that she was a good homemaker and mother. While the three-admitted incidents of physical abuse by the husband against the wife may have influenced the master, there were many factors upon which his decision was based. We find, therefore, that the husband's argument on this issue is without merit.

■ The wife's argument is equally unpersuasive. She urges that she deserves more than 65 percent of the marital estate because the husband was solely responsible for the failure of their marriage. We find that the trial master's award was generous and well considered. As discussed above, the trial master weighed the evidence, considered the statutory factors, and found that although the wife suffered emotional and physical abuse by her husband, she was not faultless in the breakdown of the marriage. It was well within the trial master's discretion to reject the wife's testimony that she was blameless. *See Casey*, 494 A.2d at 82 (citing *In re Randy B.*, 486 A.2d 1071, 1073 (R.I.1985)). Even assuming arguendo that the husband was completely responsible for the failure of the marriage, a trial justice may not award all the marital assets to one spouse. *Sattari v. Sattari*, 503 A.2d 125, 127 (R.I.1986). After reviewing the record, we find no evidence that the trial master abused his discretion by awarding the wife 65 percent of the marital assets.

The husband next argues that the trial master erred by considering his disability pension from the city of Warwick a marital asset and therefore erred by awarding the wife 65 percent of the monthly benefits. He urges that his firemen's disability pension is statutorily exempt from attachment under

G.L.1956 (1985 Reenactment) § 9–26–5.[1] The wife, relying upon this court's recent holding in *Moran*, argues that the disability pension is marital property and is not statutorily exempt from equitable distribution.

The issue of whether the husband's municipal disability pension is a marital asset subject to equitable distribution is one of first impression in Rhode Island. The husband suffered a serious back injury in 1975 and was forced to retire from the Warwick Fire Department after ten years of service. As a result of his injury, the husband began receiving biweekly payments from the firefighters' disability pension fund. These moneys were used to pay household expenses and to increase the marital assets. The payments continued despite husband's subsequent employment with Griggs & Browne, and the income was used to support the family until the parties' separation.

There is a split of authority among those jurisdictions which have addressed this issue. A number of courts have held that disability benefits are a marital asset. *Morrison v. Morrison*, 286 Ark. 353, 356, 692 S.W.2d 601, 602 (1985) (dividing disability benefits equally not abuse of trial judge's discretion); *In re Marriage of Smith*, 84 Ill.App.3d 446, 455, 39 Ill.Dec. 905, 911, 405 N.E.2d 884, 890 (1980); *In re Marriage of Cooper*, 243 Mont. 175, 179, 793 P.2d 810, 812 (1990); *Kruger v. Kruger*, 73 N.J. 464, 472, 375 A.2d 659, 663 (1977) (military disability benefits marital property). The Maryland court has labeled a contributory disability pension a marital asset but assigns to it a lesser value than a service retirement pension because of the contingent nature of the former plan. *Lookingbill v. Lookingbill*, 301 Md. 283, 291–92, 483 A.2d 1, 5 (1984).

Other jurisdictions have declared disability pensions separate property to be considered by the court only in awarding alimony and child support. *In re Marriage of Franz*, 831 P.2d 917, 918–19 (Colo.App.1992); *Freeman v. Freeman*, 468 So.2d 326, 328 (Fla.Dist.Ct. App.1985); *see also In re Minnis*, 54 Or.App. 70, 72, 634 P.2d 259, 260 (1981). These courts view the disability payments as compensation to the disabled spouse for lost earning capacity, injuries, and pain and suffering.

Still other courts examine the nature of the disability benefits and may consider some portion of the payments marital property. *Villasenor v. Villasenor*, 134 Ariz. 476, 479, 657 P.2d 889, 892 (1982) (all sums received in excess of those attributable to deferred compensation for past employment deemed separate property); *Dunn v. Dunn*, 35 Ark.App. 89, 93, 811 S.W.2d 336, 338–39 (1991) (benefits paid in return for husband's services as company executive were consideration earned during marriage and not awarded as benefits for permanent disability or future medical costs); *Queen v. Queen*, 308 Md. 574, 586–87, 521 A.2d 320, 327 (1987) (only portion of husband's disability award compensating for loss of earning capacity during marriage marital property); *West v. West*, 115 A.D.2d 601, 602, 496 N.Y.S.2d 263, 264 (1985) (benefits constituting deferred compensation are marital property); *In re Hoag*, 122 Or.App. 230, 236, 857 P.2d 208, 211–12 (1993) (if disability benefits intended to provide something other than wage replacement, may be appropriate to treat benefits as marital asset); *Ciliberti v. Ciliberti*, 374 Pa.Super. 228, 233–34, 542 A.2d 580, 582 (1988) (portion of disability benefits intended as retirement benefits marital property).

We are of the opinion that a disability pension is not a marital asset and is therefore not subject to equitable distribution. "Such benefits are intended to compensate the employee spouse for lost earning capacity. They are paid in lieu of the earnings which would have been paid to the employee if he or she had been able to work." *Ciliberti*, 374 Pa.Super. at 233–34, 542 A.2d

---

1. General Laws 1956 (1985 Reenactment) § 9–26–5 states in pertinent part:

   "No interest of any person in any pension fund or in any pension derivable therefrom, for the benefit of policemen or firemen, now or hereafter created or held by authority of law by any city or town, or by any public officer or officers or board of officers therein, to which fund such city or town contributes in any way, shall be subject to trustee process or liable to attachment on any writ, original, mesne, or judicial, or be taken on execution or any process, legal or equitable; and no assignment of any such interest shall be valid."

at 582. Such a pension is to be considered, however, as a source of income to the disabled spouse from which alimony and child-support orders can be paid.

■ Because of the wife's reliance on this court's holding in *Moran*, we take this opportunity to clarify our holding and enunciate the narrow parameters within which it applies. In *Moran* we determined that a municipal retirement pension is not exempt from equitable distribution by virtue of G.L. 1956 (1990 Reenactment) § 36–10–34.[2] However, *Moran* involved a contributory retirement pension, not a disability pension. Despite its broad language, the court's rationale in *Moran* cannot logically be applied to a disability pension. A true disability pension has no resemblance to a contributory retirement pension. The former is contingent in nature and may be terminated if the employee spouse loses his or her disabled status. A contributory retirement pension is akin to a "forced savings account." *Moran*, 612 A.2d at 33 (quoting *Stevenson*, 511 A.2d at 965). The "family loses its ability to spend a portion of its income when that income is deferred and placed in a pension." 612 A.2d at 33 (quoting *Young v. Young*, 507 Pa. 40, 50, 488 A.2d 264, 269 (1985)). The disability benefits in this case were used and enjoyed by the parties throughout their marriage to increase the marital estate. Additionally, the purpose behind a retirement pension—to provide for the family in the future—is opposite to the many purposes served by a disability pension. Disability benefits "may compensate for the loss of earnings resulting from compelled premature retirement and from a diminished ability to compete in the employment market. Disability benefits may also serve to compensate the disabled person for personal suffering caused by the disability. Finally, disability benefits may serve to replace a retirement pension by providing support for the disabled worker and his family after he leaves the job." *Ciliberti*, 374 Pa.Super. at 233, 542 A.2d at 582 (citing *In*

*re Marriage of Stenquist*, 21 Cal.3d 779, 788, 582 P.2d 96, 101, 148 Cal.Rptr. 9, 14 (1978)).

The husband argues that his disability pension is exempt from distribution pursuant to § 9–26–5. Because we hold that a disability pension is not a marital asset, § 9–26–5 has no application in the instant action.

■ The husband next argues that the trial master erred by awarding the wife alimony. Provided that the trial master considered the statutory elements of § 15–5–16, such as "the length of the marriage; the conduct of the parties during the marriage; the health, age, station, occupation, amount and source of income, vocational skills, and employability of the parties; and the state and the liabilities and needs of each of the parties," this court will not disturb the discretionary award. *Cok*, 479 A.2d at 1189.

■ In awarding alimony, the trial master must consider the parties' needs in light of the property distribution. *See Sattari*, 503 A.2d at 128. Alimony should be "payable for a short, but specific and terminable period of time, which will cease when the recipient is, in the exercise of reasonable efforts, in a position of self-support." *Casey*, 494 A.2d at 83 (quoting *Turner v. Turner*, 158 N.J.Super. 313, 314, 385 A.2d 1280, 1280 (1978)). The trial master properly recognized the rehabilitative nature of alimony in awarding the wife one year of alimony in the amount of $200 per week. *See Stevenson*, 511 A.2d at 967; *Casey*, 494 A.2d at 83; *D'Agostino v. D'Agostino*, 463 A.2d 200, 202 (R.I.1983). He determined that the wife needs temporary support while she finishes her education and seeks full-time employment and that the husband has the ability to pay. We hold therefore that the trial master did not abuse his discretion in awarding the wife one year of alimony.

The husband next argues that the trial master erred by ordering him to maintain health insurance coverage for his wife for five years or until she secures employment that provides it. The wife urges that the

---

**2.** General Laws 1956 (1990 Reenactment) § 36–10–34 states in pertinent part:

"Any and all retirement benefits and contributions in the state employees' and municipal employees' retirement systems shall be exempt from lien, attachment, or garnishment and shall not be transferable or assignable."

health coverage is another form of support, which a trial court has the discretion to award.

■ The maintenance of health insurance is a form of support, the award of which is within the trial court's discretion. The Insurance Continuation Act, G.L.1956 (1989 Reenactment) § 27–20.4–1, as amended by P.L.1993, ch. 276, § 1, provides in pertinent part:

"In the event of a final judgment of divorce, whether absolute or otherwise, where one party to said divorce was at the time of the entry of said judgment for divorce a member of a health plan providing family coverage * * * the person who was the spouse of said party prior to said entry of judgment for divorce may remain eligible for continuing benefits under said plan and health maintenance organization without additional premium or examination if said order is included in the judgment when entered. Such eligibility shall continue as long as the original member is a participant in such plan * * * and until either one of the following shall take place: (1) the remarriage of either party to the divorce, or (2) until such time as provided by said judgment for divorce. If the person who was the spouse of a member of a plan or health maintenance organization as set forth above becomes eligible to participate in a comparable plan or health maintenance organization through his or her own employment, the continuation of the original plan coverage shall cease."

Under the terms of the statute, the award of health insurance coverage to the wife will cost the husband nothing provided he is a member of such a plan and so long as he does not remarry or become unemployed. However, as discussed above, an award of health-care benefits is a form of spousal support for which the husband can be made financially liable.

The husband's last argument is that the trial master erred in ordering him to pay 65 percent of the wife's counsel fee. He urges that the wife was awarded sufficient assets from which to pay her attorney.

The trial master found that the final bill for legal services rendered to the wife was $26,360.46 and that the husband owed $17,-134.30, or 65 percent. Prior to trial the wife had paid $9,172.25 from the couple's joint funds, leaving a balance of $17,188.21. The court credited the husband with $4,586.12 as joint owner of the $9,172.25. Therefore, the trial justice ordered the husband to pay the wife's attorney $12,548.18.

■ An award of attorney's fees is not punitive in nature but serves to ensure that a spouse who lacks financial stability is still able to secure competent representation in the divorce proceeding. *See Centazzo v. Centazzo,* 556 A.2d 560, 562 (R.I.1989). It is well established that "before awarding counsel fees, the trial justice must determine that the party seeking the award is without funds or property available to pay the fees and that the spouse who will be charged with payment of the fees has the financial ability to satisfy the obligation." *Stevenson,* 511 A.2d at 967 n. 6; *see also Moran,* 612 A.2d at 34; *Sattari,* 503 A.2d at 128 n. 2; *Casey,* 494 A.2d at 84; *Tarro v. Tarro,* 485 A.2d 558, 564 (R.I. 1984); *Paradiso v. Paradiso,* 122 R.I. 1, 3–4, 404 A.2d 60, 61 (1979).

■ It is within the trial court's discretion to determine the need and amount of counsel fees to be awarded. *Fricke v. Fricke,* 491 A.2d 990, 996 (R.I.1985). This court will not disturb the decision of the trial justice in the absence of an abuse of discretion. *Id.* In this case the wife was awarded 65 percent of the marital domicile, valued at $325,000, with the option to sell the home or to remain in it and pay the husband $42,-339.85. The property is not subject to a mortgage. In this case the liquidity of the assets awarded to each spouse should have no bearing on an award of counsel fees. *See Casey,* 494 A.2d at 84. By selling the marital home, if she should choose to, the wife would have more than sufficient funds from which to pay the husband and her attorney. Therefore, we find that the trial court abused its discretion, and we reverse the trial master's award of counsel fees to the wife. Addi-

tionally, the wife must reimburse the husband for half the amount paid to her attorney from the joint account.

For these reasons the wife's appeal is denied, the husband's appeal is sustained in part, and the papers of the case are remanded to the Family Court for further proceedings consistent with this opinion.