**Robert W. MURPHY**

v.

**Deborah T. MURPHY.**

No. 97–25–Appeal.

Supreme Court of Rhode Island.

June 18, 1998.

---

John D. Lynch, Warwick, for Plaintiff.

Joseph E. Marran, Jr., Pawtucket, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the defendant, Deborah T. Murphy, from a final judgment of divorce entered in the Family Court. The Family Court master awarded the parties an absolute divorce based upon irreconcilable differences that had caused the irremediable breakdown of the marriage. The defendant has appealed several aspects of the Family Court order, including the distribution of the marital property, the awards for child support and alimony, and the award of physical custody of the parties' minor child to the plaintiff, Robert W. Murphy. For the following reasons, we deny and dismiss the defendant's appeal and affirm the judgment of the Family Court.

### Facts and Procedural History

The parties were married in Nevada on October 15, 1983. The defendant had two children from a prior marriage: Jason, who was born in 1977, and Kerri, who was born in 1978. These two children continued to reside with their mother after she married plaintiff, and although they were never legally adopted by plaintiff, they took the last name Murphy for the purposes of their school records. During the marriage the parties had a son, Justin, who was born on August 5, 1986.

The family moved to Rhode Island in 1988, at which time, according to plaintiff, the marriage had already begun to deteriorate. The parties agreed that significant problems arose between plaintiff and his stepchildren, especially Jason, and that these problems were mirrored by developing tension between the parties themselves. On November 24, 1993, plaintiff filed a complaint for divorce on the ground of irreconcilable differences that had led to the irremediable breakdown of the marriage. In her answer to the complaint, defendant included a counterclaim for divorce on the same ground. The case was heard by a master of the Family Court in April 1996.

During the trial, Jason admitted past drug use for which he had received counseling and rehabilitation; he also admitted that he continued to use alcohol on a regular basis, even though he was then only eighteen years old. At the time of the divorce proceedings, Jason was working toward his high school equivalency degree by attending a special program at the Community College of Rhode Island. Kerri, who was seventeen years old and entering her senior year of high school at the time of trial, had just given birth to a son. According to her testimony, she was receiving some child support from the baby's twenty-two-year-old father, although the two were not married. Both Jason and Kerri, as well as Kerri's infant child, lived with defendant in the marital home.[1]

The plaintiff alleged that Jason was abusive to Justin, and that defendant refused either to control Jason or to defend Justin from his older brother. Although acknowledging that she had had some problems with Jason, defendant countered that the problems in the marriage stemmed from plaintiff's mistreatment of his stepchildren and his general domineering demeanor toward his wife and family. The master heard testimony from both parties, as well as from Jason, Kerri, and a guardian ad litem appointed for Justin,[2] and found "as a fact that the breakdown of the marriage was [caused by] the

---

1. The plaintiff had vacated the family residence in July 1994 pursuant to a Family Court order.

2. The plaintiff had requested the appointment of the guardian because of allegations that Jason physically abused Justin.

children of the Defendant's prior marriage and the Defendant's inability to control their behavior as well as the prejudice and potential harm to the natural child of the parties, to wit: Justin." The defendant was expressly found to have been at fault in the marriage.

The Family Court entered a final judgment on June 28, 1996, awarding the parties an absolute divorce on the statutory ground of irreconcilable differences. The parties were awarded joint custody of Justin, with physical custody to be with plaintiff, although defendant was to have "all reasonable rights of visitation, so long as said visitation is not in the presence of Defendant's children, Jason and Kerry, or of Kerry's boyfriend." The defendant was also ordered to pay $34 per week in child support, but this amount was to be set off for two years by a rehabilitative alimony award to defendant in the amount of $100 per week. The master distributed the marital property such that plaintiff obtained 55 percent and defendant 45 percent.

On January 6, 1997, defendant brought the instant appeal, challenging, inter alia, the child custody award as well as the master's distribution of the marital property, the award of alimony, and the master's refusal to order plaintiff to pay any support for his two stepchildren. Additional facts are included in the discussion of the issues on appeal.

### Custody of Justin

■ The defendant argued on appeal that the trial master abused his discretion in granting physical custody of Justin to plaintiff. We review child custody awards under an abuse of discretion standard, always cognizant that "this Court's 'lode-star principle requires that any custody determination be based on the best interests of the child.'" *Mattera v. Mattera*, 669 A.2d 538, 541 (R.I. 1996) (quoting *Sammataro v. Sammataro*, 620 A.2d 1253, 1254 (R.I.1993)). "Provided that the trial court considers the best interests of the child, this [C]ourt will not disturb the discretionary award of child custody." *Mattera*, 669 A.2d at 541 (quoting *Maroney v. Maroney*, 644 A.2d 827, 827–28 (R.I.1994) (per curiam)).

■ The guardian appointed to safeguard Justin's interests found that the allegations that Jason had physically abused Justin were largely unsubstantiated. Nevertheless, he was troubled by Jason's admitted use of drugs and alcohol while he was in the family home. The guardian did find that both plaintiff and defendant were fit and proper parents to Justin. The master found, however, that it was not in Justin's best interests to be in the presence of either Jason or the father of Kerri's infant and concluded that defendant was unable or unwilling to control Jason or to exclude him from the family home when Justin was there. Accordingly, the master awarded joint custody of Justin to both parties but physically placed the boy with plaintiff, explaining that this arrangement would "ensure the safety and well-being of Justin." The defendant was granted a so-called liberal visitation schedule. Because the master carefully considered Justin's best interests before awarding custody, we are of the opinion that the order entered in the Family Court was a reasonable one designed to safeguard and promote those interests. Therefore, we shall not disturb that order on appeal.

### Equitable Distribution of the Marital Assets

■ The defendant also contended that the Family Court master abused his discretion in distributing the marital property between the parties. According to defendant, it was inequitable to award her only 45 percent of the marital estate rather than 50 percent in light of the master's finding that "each party contributed equally in building the estate." As this Court has reiterated on numerous occasions, the equitable distribution of marital assets is left to the sound discretion of the trial court which is obligated to consider the factors prescribed by the Legislature in G.L.1956 § 15–5–16.1. *Thompson v. Thompson*, 642 A.2d 1160, 1162 (R.I.1994); *Moran v. Moran*, 612 A.2d 26, 33–34 (R.I.1992). "If the trial master did not overlook or misconceive material evidence, and if he considered all the requisite statutory elements, this [C]ourt will not disturb the

trial court's findings." *Thompson,* 642 A.2d at 1162.

■ The transcripts from this case reveal that the trial master conscientiously considered all the factors enumerated in § 15-5-16.1 when distributing the marital property. The parties' respective contributions to the estate constitute but one of those statutory factors. The master also found that the conduct of defendant, specifically her failure to control her son Jason, led to family tension that was a significant factor in the deterioration of the marriage. The master's review of the statutory factors was thorough and reasonable, and he acted well within his discretion in apportioning the marital estate.

### Defendant's Claim for Alimony

■ The defendant next claimed that the "great disparity of income of the two parties" entitled her to an award of permanent alimony. "[A]limony is a 'rehabilitative tool designed to provide economic support for a dependent spouse and is based upon need.'" *Wrobleski v. Wrobleski,* 653 A.2d 732, 734 (R.I.1995) (quoting *Ramsbottom v. Ramsbottom,* 542 A.2d 1098, 1100 (R.I.1988)). Although defendant alleged that she needed approximately $400 per week to support herself and that she would need this support on a permanent and ongoing basis, the master disagreed. At the time of the trial, defendant had recently completed post-secondary school training preparing her for a job as a dental hygienist. The trial master considered defendant's new earning potential and the fact that her other children, by virtue of their ages, did not pose a continuing financial burden to her, and he found that defendant could, in his words, "make a fresh or new start." We shall not disturb the findings of fact made by a trial master in a divorce action unless the master "misconceived the relevant evidence or was otherwise clearly wrong." *Wrobleski,* 653 A.2d at 734. In addition, "[p]rovided that the trial master considered the statutory elements of § 15-5-16, * * * this [C]ourt will not disturb the discretionary award [of alimony]." *Thompson,* 642 A.2d at 1164. The master's findings were not erroneous, nor did he fail to consider expressly the statutory factors of § 15-5-

16. Therefore, it is our conclusion that the master acted within his discretion in awarding defendant two years of rehabilitative alimony in the amount of $100 per week and refusing her request for further alimony after that two-year period.

### Plaintiff's Obligation to Support His Stepchildren

■ The defendant also contended on appeal that the trial master erred in refusing to impose on plaintiff an obligation to provide child support for Jason and Kerri. The defendant directed this Court to the case of *Miller v. Miller,* 97 N.J. 154, 478 A.2d 351 (1984), in which the Supreme Court of New Jersey set forth an analytic framework for determining whether a parent is equitably estopped from denying a duty to support his or her stepchildren after divorcing the children's natural parent. *Id.* 478 A.2d at 358-59. According to defendant, the principles espoused by *Miller* would impose a duty of support on plaintiff in this case. We disagree with her contention.

*Miller* applied well-known elements of equitable estoppel—a representation coupled with detrimental reliance—to a divorce case in which stepchildren were involved. The *Miller* court held that "[t]o prove equitable estoppel, the custodial parent has the burden to establish not only representation of support and reliance but also detriment, *i.e.,* that the children will suffer future financial detriment as a result of the stepparent's representation or conduct that caused the children to be cut off from their natural parent's financial support." *Id.* 478 A.2d at 358. The stringency of this rule is underscored by the court's admonition that "[i]t is only when a stepparent by his or her conduct actively interferes with the children's support from their natural parent that he or she may be equitably estopped from denying his or her duty to support the children." *Id.* 478 A.2d at 359.

The facts of the present case differ significantly from those in *Miller* in which the natural father had vigorously attempted to remain in contact with his children and to provide for them. The stepfather there had "strenuously opposed any visitation and, in

581

fact, prohibited it. He rejected all offers of [the natural father] to contribute to the support of his children and tore up a check tendered for that purpose." *Id.* 478 A.2d at 354. A parallel cannot be drawn between the two cases. Although Jason's and Kerri's natural father has been absent from their lives, that absence was apparently as much by his design as by anyone else's. There were no findings that plaintiff was responsible for Jason and Kerri not receiving financial support from their natural father, nor was there evidence that the natural father had ever attempted to contact his children only to be rebuffed by plaintiff. Even if this Court were to adopt *Miller* as the law of Rhode Island, defendant here cannot meet the burden of proving equitable estoppel. *See id.* 478 A.2d at 358 (observing that burden of proof is upon party alleging equitable estoppel). Therefore, the trial master did not abuse his discretion in declining to order plaintiff to pay child support for Jason and Kerri.

The defendant also raised objections to the master's award of counsel fees and to the master's offset of the plaintiff's arrearages in child support with the plaintiff's mortgage and utility payments. We have carefully examined these claims and conclude that they are without merit.

### Conclusion

In conclusion, therefore, for the foregoing reasons, we deny and dismiss the defendant's appeal and affirm the judgment of the Family Court, to which the papers in this case may be returned.