Laureen A. DeANGELIS

v.

Peter E. DeANGELIS.

No. 2005–338–Appeal.

Supreme Court of Rhode Island.

June 1, 2007.

Kathleen Managhan, Esq., for Plaintiff.

Robyn K. Factor, Esq., for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The defendant, Peter E. DeAngelis (defendant or Peter), appeals from a Family

Court judgment that awarded the plaintiff, Laureen A. DeAngelis (plaintiff or Laureen), 80 percent of the marital assets.

On appeal, defendant argues (1) that the trial justice erred in ruling that defendant was not entitled to any portion of plaintiff's disability pension and (2) that the trial justice erred in his ultimate division of the marital assets.

For the reasons set forth herein, we affirm the judgment of the Family Court.

## Facts and Travel

Peter and Laureen were married on February 16, 1975; they are the parents of two adult children, Amanda and Matthew. In November of 2002, Laureen filed a complaint for divorce, and shortly thereafter Peter filed a counterclaim for divorce. At the trial in Family Court, which was held over seven days in late January and early February of 2005, Laureen, Peter, their two children, and one other witness testified; additionally, more than fifty documents were introduced as exhibits. On June 15, 2005, the trial justice issued his bench decision, in which he made the following findings of fact.

Laureen had been employed as a public school teacher in South Kingstown for many years before she was diagnosed with breast cancer in February of 2000. Her illness has involved numerous hospitalizations and surgeries, and it is ongoing.

In 1996, Peter and Laureen were on the verge of seeking a divorce. Peter had not been living in the marital home for almost two years. According to Laureen's testimony in the instant case, Peter had been verbally abusive to her; moreover, Peter admitted to having engaged in extramarital affairs. When Peter requested permission to return to the marital home, several conversations took place between Peter and Laureen. In May of 1996, there was a family meeting regarding Peter's request. That meeting was attended by Peter, Laureen, and the two children. It was Laureen's testimony that, during this meeting, she agreed to allow Peter back into the marital home if he fulfilled three conditions: (1) continued alcohol treatment counseling; (2) contribution to family expenses; and (3) waiver of any claim to Laureen's pension. Laureen and the two children testified that Peter assented to these three conditions. Peter, for his part, acknowledged that the family meeting had taken place and that he had agreed to the first two conditions, but he denied that they had discussed any waiver of his interest in Laureen's pension. Shortly after the family meeting, Peter returned to the marital home.

In November of 2002, Laureen and Peter separated for the final time. Laureen obtained a restraining order against Peter, which order called for his removal from the family home and prohibited him from having any contact with Laureen.

Thereafter, in June of 2003, after twenty-six and one-half years of service as a public school teacher, Laureen applied for a disability pension on the ground that her illness and the resulting medical treatments prevented her from continuing her employment. She did not notify Peter about her application for that pension.[1] At that time, Laureen was out of work and facing economic hardship, and Peter was not providing any support.[2] Laureen be-

---

1. The trial justice ruled that Laureen had no obligation to notify Peter of her application for the disability pension. That ruling has not been challenged on appeal.

2. Although in July of 2003 Peter had been ordered by the court to pay Laureen $150 weekly for her support, Peter had paid only a total of $1,200 by the time of the trial.

gan receiving disability pension payments in October of 2003.

On September 28, 2005, the trial justice issued a decision pending entry of final judgment. The defendant filed his notice of appeal on October 12, 2005. Shortly thereafter, on October 21, 2005, final judgment was entered.[3]

### Standard of Review

■ The equitable distribution of property in a divorce action involves three steps: (1) determining which assets are marital property; (2) considering the factors set forth in G.L.1956 § 15–5–16.1(a); and (3) distributing the property. *Horton v. Horton*, 891 A.2d 885, 889 (R.I.2006); *Koutroumanos v. Tzeremes*, 865 A.2d 1091, 1096 (R.I.2005); *Stephenson v. Stephenson*, 811 A.2d 1138, 1141 (R.I.2002).

■ It is well established that this Court will defer to a trial justice's determinations of fact in a divorce action "unless he or she has misconceived the relevant evidence or was otherwise clearly wrong." *Stephenson*, 811 A.2d at 1141 (internal quotation marks omitted); *see also Horton*, 891 A.2d at 888; *Koutroumanos*, 865 A.2d at 1097. Additionally, determinations of credibility made by a trial justice in a nonjury trial will not be disturbed by this Court "unless the findings are clearly wrong or the [trial justice] misconceived or overlooked material evidence." *Andreozzi v. Andreozzi*, 813 A.2d 78, 82 (R.I.2003); *see also Opella v. Opella*, 896 A.2d 714, 718 (R.I.2006); *Bogosian v. Bederman*, 823 A.2d 1117, 1120 (R.I.2003). Furthermore, the trial justice is accorded broad discretion with respect to the equitable distribution of marital assets; consequently, we

will not overturn the trial justice's distribution unless it is demonstrated that he or she has abused his or her discretion. *See Stephenson*, 811 A.2d at 1141, 1142; *see also Koutroumanos*, 865 A.2d at 1098; *Thompson v. Thompson*, 642 A.2d 1160, 1162 (R.I.1994).

### Analysis

### I

### Laureen's Disability Pension

The defendant's first argument on appeal is that the trial justice erred in ruling that defendant was not entitled to any portion of plaintiff's disability pension. His argument is two-fold. He first contends that the trial justice erred in excluding plaintiff's disability pension from the marital property; he also contends that the trial justice erred in ruling that defendant was bound by an oral agreement between the parties, in which defendant purportedly waived his interest in plaintiff's pension rights. We disagree with defendant's contentions.

### A

### Nature of Disability Pension

■ This Court has previously held that a disability pension does not constitute a marital asset and, therefore, is not subject to equitable distribution upon the dissolution of a marriage. *Thompson*, 642 A.2d at 1163. However, we have also held that a disability pension will be subject to equitable distribution to the extent that it represents vested retirement pay earned during the marriage. *Allard v. Allard*, 708 A.2d 554, 555 (R.I.1998). The latter holding is consistent with the principle that contributory retirement pensions are con-

---

At the time of the issuance of the Family Court decision in September of 2005, there was an arrearage in the amount of $12,450.

**3.** We will treat this appeal as proper even though the notice of appeal was filed prior to the entry of final judgment. *See, e.g., Estate*

*of Dellefratte v. Dellefratte*, 917 A.2d 407, 408 n. 3 (R.I.2007) (mem.); *McAdam v. Grzelczyk*, 911 A.2d 255, 258 n. 4 (R.I.2006); *McBurney v. The GM Card*, 869 A.2d 586, 589 n. 3 (R.I.2005).

sidered marital assets and are subject to equitable distribution. *See id.* at 556.

In the instant case, the trial justice concluded that any sums that Laureen collects from her disability pension until she attains sixty years of age (on July 28, 2010) should not be considered marital assets and, therefore, should not be subject to equitable distribution. He specifically distinguished the sums that Laureen would collect from her disability pension before July 28, 2010 (which he deemed compensation for lost earnings) from the sums that she would collect thereafter (which would be classified as retirement pay).[4] Consequently, he ruled that the amounts received before July 28, 2010 would not be subject to equitable distribution but that any amounts received thereafter would be subject to equitable distribution. It is our opinion that the trial justice was correct in so ruling.

Laureen would be eligible to receive her retirement pension only after completing twenty-eight years of employment or upon turning sixty years of age. Since she has to date completed twenty-six and one-half years as a teacher and since her medical condition prevents her from returning to that employment, absent a change in her state of health that would permit her to return to teaching, she will become eligible to receive her retirement pension only upon turning sixty on July 28, 2010. Consequently, the sums that she receives

through her disability pension until July 28, 2010 are compensation for her lost earning capacity and are not subject to equitable distribution. Unlike the defendant in *Allard*,[5] Laureen did not elect to receive her disability pension payments in lieu of her retirement pension; she had no such choice to make since she is ineligible to receive her retirement pension before July 28, 2010. Therefore, Laureen's disability pension payments are not marital assets.

Accordingly, we hold that the trial justice did not abuse his discretion when he concluded that Peter was not entitled to receive any share of Laureen's pension before July 28, 2010.

## B

### Alleged Waiver of Interest in Pension

■ Peter next argues that the trial justice erred in finding that he had waived his interest in Laureen's pension by way of an oral agreement. In his decision, the trial justice specifically ruled that, as of July 28, 2010, Laureen's pension would constitute a marital asset subject to equitable distribution. However, he also determined that, despite this fact, Peter would not be entitled to any portion of the pension even after that date because, through an oral agreement with Laureen, he waived any claim to her pension benefits.[6] The defendant contends that there was no

---

4. The trial justice also noted that Laureen's disability pension was provisional due to the fact that she may be required to be examined yearly so that a determination can be made as to whether the disability still exists. As of July 28, 2010, however, the pension would become permanent.

5. In *Allard v. Allard*, 708 A.2d 554, 555–56 (R.I.1998), the defendant, who opted to receive disability pension benefits rather than ordinary retirement pension benefits, had become eligible to receive his retirement pension fifty-two days before his request for a

disability pension was approved. Consequently, this Court held that that portion of the disability pension that represented the amount that the defendant would have received pursuant to his retirement pension constituted marital property and, therefore, was subject to equitable distribution. *Id.* at 558.

6. In the Facts and Travel section of this opinion, we have summarized the factual context in which Peter agreed to waive any claim to Laureen's pension benefits.

valid contract between Laureen and him concerning this matter because there was a lack of consideration. We disagree with this contention.

In the instant case, the trial justice indicated that his determination as to the existence *vel non* of an oral contract to waive an interest in the pension would depend on the credibility of the witnesses who testified about that issue. He specifically found that Peter's testimony was "vague, evasive[,] and contradictory." Additionally, the trial justice stated that Peter's answers were conflicting and confusing even on direct examination and that "[s]everal key portions of his testimony were negated by documents." For these reasons, the trial justice concluded that Peter was not a credible witness. On the other hand, the trial justice determined that Laureen was "believable and forthright," and he pointed out that her testimony regarding the family meeting in May of 1996 was corroborated by the testimony of the couple's two children.

■■■ It is well established that a valid contract requires "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." *Rhode Island Five v. Medical Associates of Bristol County, Inc.,* 668 A.2d 1250, 1253 (R.I.1996) (quoting Black's Law Dictionary 322 (6th ed.1990)). Consideration consists of "some legal right acquired by the promisor in consideration of his promise, or forborne by the promisee in consideration of such promise." *Darcey v. Darcey,* 29 R.I. 384, 388, 71 A. 595, 597 (1909) (internal quotation marks omitted). In determining whether there was sufficient consideration for a binding contract to have been formed, we employ the bargained-for exchange test; that test provides that something is bargained for, and therefore constitutes consideration, "if it is

sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Filippi v. Filippi,* 818 A.2d 608, 624 (R.I.2003) (internal quotation marks omitted).

In his decision, the trial justice made reference to the relevant elements of a valid contract, and he indicated that a contract could be either written or oral. He acknowledged that a valid contract must be the result of "a meeting of the minds of the parties in mutual assent to the terms" of the agreement, must be "sufficiently definite," and must be "based upon a sufficient consideration." The trial justice stated that consideration consists of "either a benefit to the party promising or a prejudice or trouble to the party to whom the promise is made." The trial justice then concluded that Peter and Laureen had entered into a valid oral contract, in which Peter had promised Laureen that he would not make any claim to her pension in the future.

We do not perceive any abuse of discretion on the trial justice's part in finding that Peter and Laureen had entered into a valid oral contract. We agree with the trial justice that Peter and Laureen mutually assented to the agreement; three of the four parties present at the family meeting testified that Peter had agreed with Laureen that he would waive his interest in her pension. Additionally, the terms of the oral agreement at issue in this case were specific enough to be judicially enforceable. *See Soar v. National Football League Players' Association,* 550 F.2d 1287, 1289–90 (1st Cir.1977). Finally, we are of the opinion that Laureen's promise[7] to allow Peter to return to the marital home was more than adequate consideration as a matter of contract law.

■■■ The defendant also argues that the trial justice erred in failing to carefully

---

7. It is undisputed that Laureen did in fact live   up to that promise.

scrutinize the alleged agreement. The defendant contends that the trial justice was required to do so due to the fact that the agreement was between spouses and that, had he done so, he would have discovered a lack of fairness in the agreement. We agree that contractual agreements between spouses must be accorded special judicial attention, especially with respect to their conformity with equitable norms. *See Gorman v. Gorman*, 883 A.2d 732, 737 (R.I.2005); *see also Resare v. Resare*, 908 A.2d 1006, 1009 (R.I.2006). We reject defendant's argument in this respect, however, because it is clear to us that the trial justice did in fact carefully scrutinize the agreement and took equitable concerns into account before concluding that Peter had entered into a valid oral agreement with Laureen.

Additionally, defendant argues that the agreement violates the Statute of Frauds.[8] We shall not address this issue because it has not been properly preserved for our review. Pursuant to our well established raise-or-waive rule, issues that are raised for the first time on appeal will not be reviewed by this Court. *Warwick*

*Housing Authority v. McLeod*, 913 A.2d 1033, 1037 (R.I.2007); *Richard v. Richard*, 900 A.2d 1170, 1178 (R.I.2006); *Narragansett Electric Co. v. Carbone*, 898 A.2d 87, 101 (R.I.2006). It is clear from the record that defendant made no mention of any Statute of Frauds defense in the proceedings below. Consequently, we need not and do not address this issue.

Accordingly, we hold that the trial justice did not err in finding that Peter and Laureen entered into a valid oral contract, in which Peter waived his right to any interest he may have had in Laureen's pension.[9]

## II

### Distribution of Marital Assets

The defendant's final contention on appeal is that the trial justice erred in his ultimate division of the marital assets. We disagree with this assertion.

When determining the equitable distribution of marital assets in a divorce action, a trial justice is vested with broad discretion, but he or she is nonetheless obligated to consider the factors set forth in § 15–5–16.1.[10] *Koutroumanos*, 865

8. General Laws 1956 § 9–1–4.

9. The defendant also contends that the trial justice erred in finding that promissory estoppel applied in these circumstances. However, since we have upheld the validity of the oral contract, defendant's contention concerning promissory estoppel is of no real-world significance in this case.

10. General Laws 1956 § 15–5–16.1(a) requires the trial justice to consider the following factors:
  "(1) The length of the marriage;
  "(2) The conduct of the parties during the marriage;
  "(3) The contribution of each of the parties during the marriage in the acquisition, preservation, or appreciation in value of their respective estates;
  "(4) The contribution and services of either party as a homemaker;

  "(5) The health and age of the parties;
  "(6) The amount and sources of income of each of the parties;
  "(7) The occupation and employability of each of the parties;
  "(8) The opportunity of each party for future acquisition of capital assets and income;
  "(9) The contribution by one party to the education, training, licensure, business, or increased earning power of the other;
  "(10) The need of the custodial parent to occupy or own the marital residence and to use or own its household effects taking into account the best interests of the children of the marriage;
  "(11) Either party's wasteful dissipation of assets or any transfer or encumbrance of assets made in contemplation of divorce without fair consideration; and
  "(12) Any factor which the court shall expressly find to be just and proper."

A.2d at 1098; *see also Horton,* 891 A.2d at 889; *Stephenson,* 811 A.2d at 1141. Consequently, we will not overturn a trial court's distribution so long as he or she "did not overlook or misconceive material evidence, and if he [or she] considered all the requisite statutory elements." *Koutroumanos,* 865 A.2d at 1098 (internal quotation marks omitted); *see also Stephenson,* 811 A.2d at 1142; *Thompson,* 642 A.2d at 1162.

In the instant case, the trial justice began by setting forth the marital assets that he had concluded comprised the marital estate. He first identified the former marital home, which was located at 82 Rosebrier Avenue in Wakefield. The property had a market value of approximately $615,000. However, it was encumbered by a mortgage of approximately $216,000 and a tax lien (which the trial justice determined was directly attributable to Peter's nonpayment of taxes) totaling $17,000 plus penalties and interest. The trial justice also included Laureen's two variable annuity accounts with a cash surrender value of $55,958, and he alluded to other miscellaneous items of personal property and automobiles. Additionally, the trial justice noted that Peter had cashed out and dissipated three of his retirement plans, and he concluded that Peter's 401k plan, if it had not been dissipated, would have been worth approximately $107,000 at the time of the decision.

The trial justice then articulated the twelve factors set forth in § 15–5–16.1(a), and he elaborated upon "the conduct of the parties, the health of the parties, the contribution to the acquisition of the assets, the contribution of the plaintiff as a homemaker[,] and the wasteful dissipation of the marital assets by the defendant."

The trial justice began his analysis with an extensive discussion regarding Peter's conduct. The trial justice found that Peter had engaged in "egregious and reprehensible conduct" during the course of Laureen's illness. Peter was repeatedly verbally abusive, insulting, and cruel to his ill spouse, and he would often ridicule her. Also, in October of 2002, he made sexual advances towards a nurse who was in their home tending to Laureen.

The trial justice also concluded that Peter's conduct had a detrimental effect on the family life. He cited Peter's abuse of alcohol, as well as his cruel and abusive behavior and his multiple extramarital affairs. The trial justice noted that, on more than one occasion, Peter yelled, screamed, and threatened to hurt and kill Laureen. He also indicated that, on several occasions, Peter deliberately lit a cigarette in front of, and blew smoke in the face of, his daughter (who suffers from cystic fibrosis and therefore has trouble breathing). The trial justice addressed the credibility of the witnesses. He found the testimony of Laureen, Matthew, and Amanda concerning Peter's conduct and behavior to be "compelling, convincing, and credible," and he found Peter's "vague and confusing denials to be unworthy of belief."

Moreover, the trial justice concluded that Laureen was the primary, and usually the exclusive, financial provider for the family, and he found her to have been an exemplary parent. In stark contrast, he determined that Peter's financial contributions to the family were "minimal at best" and that Peter's wasteful dissipation of assets and failure to contribute to the household expenses resulted in financial hardship for the family.

Consequently, the trial justice found Peter to be solely at fault for the deterioration of the marriage, and he awarded Laureen 80 percent of the marital assets and Peter 20 percent. It is our opinion that the trial justice correctly applied the required factors and divided the marital assets appropriately. Our review of the rec-

ord has not revealed any instance in which the trial justice overlooked or misconceived material evidence or failed to consider the requisite statutory factors.

We also reject Peter's contention that the trial justice based his decision, in part, on Peter's alcoholism; he argues that this condition should not be held against a party, but should be considered a disease. It is clear to us, however, that the trial justice's decision rests squarely upon his assessment of Peter's abusive, philandering, and egregious conduct, as well as upon his wasteful dissipation of assets.

■ It is well established that the distribution of the marital assets "need not be equal in order to be equitable." *Koutroumanos*, 865 A.2d at 1098 (internal quotation marks omitted). There is no question that the ultimate distribution of marital assets in this case was not equal. The trial justice recognized that "Peter's behavior and conduct as well as his wasteful dissipation of assets and his failure to make meaningful financial contributions to the marriage demand an unequal division of assets." In view of the circumstances described above, it is our opinion that the trial justice did not abuse his discretion in deciding to distribute the marital assets as he did; his distribution was predicated upon his findings of fact, and our own review of the record has convinced us that those findings of fact were well supported.

Accordingly, after our review of the record, we find no abuse of discretion on the trial justice's part, and we uphold the trial justice's division of the marital assets.[11]

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Family Court. The record may be remanded to that court.

---

**11.** The defendant also suggests that the trial justice erred in denying him alimony, but he has not developed this argument in any meaningful way. It is well established that a mere passing reference to an argument is insufficient to merit appellate review. *See Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n. 1 (R.I.2002) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue."); *see also* Sup.Ct. R. Art. I, R. 16; *James J. O'Rourke, Inc. v. Industrial National Bank*, 478 A.2d 195, 198 n. 4 (R.I.1984); *Mercurio v. Fascitelli*, 116 R.I. 237, 243–44, 354 A.2d 736, 740 (1976).