Bernadine R. DiORIO

v.

Ronald C. DiORIO.

No. 98–592–Appeal.

Supreme Court of Rhode Island.

May 17, 2000.

---

John D. Lynch, Warwick, for plaintiff.

Barry J. Kusinitz, for defendant.

Present WEISBERGER, C.J., and BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

A Family Court magistrate granted Bernadine R. DiOrio's petition for divorce from Ronald C. DiOrio, and thereafter proceeded to distribute the marital estate, pursuant to G.L.1956 § 15–5–16.1. Ronald C. DiOrio appeals, arguing that the magistrate erred in apportioning and distributing the marital estate. For the reasons hereinafter set out, we sustain the appeal in part and remand the case to the Family Court for redetermination of the marital portion of the plaintiff's retirement pension; for a redetermination of the amount of any tax reduction to be made on that pension, and for adjustment of the value of the Martha's Vineyard property.

## I

### Case Facts and Travel

The DiOrios (Ronald) and (Bernadine) were married on June 21, 1965. Two children were born of the marriage, both of whom were emancipated adults at the time of the divorce proceedings. The parties separated in January 1997, Bernadine asserting that the marriage had deteriorated for a number of years, primarily because of Ronald's emotional withdrawal from the marriage as well as deterioration from the effects of serious financial and legal difficulties.

After trial on Bernadine's divorce petition, a Family Court magistrate found that a complete and irremediable breakdown in the marital relation existed. He attributed the breakdown, in large part, to a long-standing lack of intimacy in the marriage, as well as to Ronald's continued silent treatment toward Bernadine. He granted Bernadine's petition for divorce, finding her without fault in the breakdown of the marital relationship, but found Ronald to be 65 percent at fault for the same.

Pursuant to § 15–5–16.1,[1] the magistrate found Ronald responsible for the entirety of the existing marital debts as a result of Ronald's poor business decisions and credit-card purchases. He further found that Ronald was "most assuredly underemployed" and found that his underemployment had served to diminish the value of the marital estate. In apportioning the marital estate, the magistrate entered an equitable award of 65 percent of the mari-

---

1. The statutory factors set forth in G.L.1956 § 15–5–16.1(a) are as follows:

 "(1) The length of the marriage; (2) The conduct of the parties during the marriage; (3) The contribution of each of the parties during the marriage in the acquisition, preservation, or appreciation in value of their respective estates; (4) The contribution and services of either party as a homemaker; (5) The health and age of the parties; (6) The amount and sources of income of each of the parties; (7) The occupation and employability of each of the parties; (8) The opportunity of each party for future acquisition of capital assets and income; (9) The contribution by one party to the education, training, licensure, business, or increased earning power of the other; (10) The need of the custodial parent to occupy or own the marital residence and to use or own its household effects taking into account the best interests of the children of the marriage; (11) Either party's wasteful dissipation of assets or any transfer or encumbrance of assets made in contemplation of divorce without fair consideration; (12) Any factor which the court shall expressly find to be just and proper."

tal assets in favor of Bernadine, totaling some $769,000, with the remaining 35 percent of the marital assets, or approximately $409,000, reflecting Ronald's distributive share. All personal property not reflected in the magistrate's decision was ordered to be retained by the party in possession at the time of trial. Ronald, on appeal, asserts that the magistrate abused his discretion in distributing the marital assets. He asserts that the magistrate erred (1) by awarding 65 percent of the marital assets to Bernadine, (2) by making a finding at trial that he was underemployed in his present work capacity, (3) by improperly calculating and improperly taxing the marital portion of Bernadine's retirement pension, (4) by failing to account for a substantial amount of personal property retained by Bernadine and (5) by failing to make certain adjustments relating to liens on marital property awarded to him in the judgment.

## II

### The Equitable Award

Ronald first asserts that the magistrate abused his discretion by awarding 65 percent of the marital estate to Bernadine. In essence, he contends that only those marital relationships plagued by gross marital misconduct or other types of egregious behavior merit such a disproportionately inequitable award. We do not agree.

It is well settled that "the equitable distribution of marital assets is left to the sound discretion of the trial court which is obligated to consider the factors prescribed by the Legislature in G.L.1956 § 15–5–16.1." *Murphy v. Murphy*, 714 A.2d 576, 579 (R.I.1998) (citing *Thompson v. Thompson*, 642 A.2d 1160, 1162 (R.I. 1994); *Moran v. Moran*, 612 A.2d 26, 33–34 (R.I.1992)). "If the trial master did not overlook or misconceive material evidence, and if he [or she] considered all the requisite statutory elements, this [C]ourt will not disturb the trial court's findings." *Id.*

at 579–80 (quoting *Thompson*, 642 A.2d at 1162).

Our review of the trial record before us reveals that the magistrate took great care to weigh all the evidence presented at trial and to consider each of the statutory factors enumerated in § 15–5–16.1 when determining the respective distributive shares of the DiOrio's marital estate. He found that the parties had been married for about thirty-three years, but during the latter stages of the marriage, Ronald "became cold and was no [*sic*] conversant, leading a separate life under the same roof." The negative conduct of Ronald, however, was but one of a number of criteria considered by the magistrate. He observed that, in regard to Bernadine's conduct, "[t]he Court heard nothing negative about the Plaintiff * * *." He also determined that Bernadine was the "primary caretaker of the children as well as being responsible for the home while the Defendant was employed full time," and that she made significant efforts toward preserving the marital estate during the last several years of the marriage. Conversely, he found that Ronald had wasted marital assets by refusing to rent out a home on Martha's Vineyard with high rental income potential, instead preferring to reside in that home and obtain low-wage employment on the island. We are of the opinion that the magistrate carefully considered all the necessary statutory factors pursuant to § 15–5–16.1, giving dispositive or controlling weight to no one single factor in arriving at his decision. Therefore, because we believe that the magistrate's review and consideration of the statutory factors was thorough and reasonable, we conclude that he did not abuse his discretion by awarding Bernadine 65 percent of the marital estate.

## III

### Ronald's Underemployment and Future Earnings Potential

We are of a similar belief that the magistrate did not abuse his discretion by

finding that Ronald was underemployed at the time of trial. Ronald asserts that the magistrate failed to take into account a pending criminal indictment for fraud against him, which he asserts rendered him effectively unemployable. He further contends that, as a result of that indictment, he may be liable for approximately $160,000 previously received in pension money, thereby potentially reducing his future earnings. Besides the indictment, Ronald argues that his accrued seniority as a school teacher, far from being a boon or benefit to him, would require a school district employer to pay him more than an entry level candidate, further detracting from his employability.

■ This Court will not disturb findings of fact made by a trial justice or magistrate in a divorce action unless he or she has "misconceived the relevant evidence or was otherwise clearly wrong." *Murphy*, 714 A.2d at 580 (quoting *Wrobleski v. Wrobleski*, 653 A.2d 732, 734 (R.I.1995)). We are of the opinion that the magistrate's findings concerning Ronald's underemployment and future earnings capacity were not clearly wrong. We note from the trial record that the magistrate carefully considered and weighed Ronald's age, health, education and employment history before determining that "with some effort [he] would be in a position to earn much more than his present income" of $8 per hour as a rental car agency employee. Based on the record before us, we determine Ronald's contention in this regard to be without merit.

## IV

### The Pension

Ronald next asserts that the magistrate erred in calculating the marital portion of Bernadine's pension. He asserts that the magistrate improperly deducted from Bernadine's portion of the pension an amount he determined to be a premarital portion. of that pension and also thereafter deducted an allowance for future tax liabilities on the already reduced pension amount. He argues that the net effect of these two adjustments was to decrease the value of the pension awarded to Bernadine, which in turn then increased her total distributive share of the remainder of the marital estate. We agree with his claim of error.

The trial record reveals that the magistrate found that the actuarial present value of Bernadine's pension was $788,918. He then proceeded to deduct a portion (approximately three years) of Bernadine's pre-marriage teaching service years reflected in the pension, to arrive at an adjusted sum of $703,918. However, we note from the record that he failed to consider trial testimony showing that Bernadine withdrew in August 1968 money representing six years of her teaching service from her pension and that she subsequently repurchased those service years in June 1990.

■ "We have previously stated that a trial justice in undertaking to distribute marital assets must initially separate non-marital assets from the marital assets in accordance with § 15–5–16.1." *Gervais v. Gervais*, 688 A.2d 1303, 1305 (R.I.1997) (citing *Hurley v. Hurley*, 610 A.2d 80, 85 (R.I.1992)). In *Quinn v. Quinn*, 512 A.2d 848 (R.I.1986), we adopted the principle of transmutation to help guide such a separation of assets, holding that "[a] transfer of nonmarital assets from one spouse to both spouses jointly, in the absence of clear and convincing evidence to the contrary, will be understood as evincing an intention to transfer the property to the marital estate." *Id.* at 852 (citing *Carter v. Carter*, 419 A.2d 1018, 1022 (Me.1980)). The record before us does not reveal any evidence, such as Bernadine's use of nonmarital assets for the repurchase of the six years of premarital service, to indicate that she intended her pension-time repurchase to be considered part of her separate, nonmarital estate. Accordingly, upon review of the record, we believe that the presumption remained unrefuted at trial that the pension-time repurchase was intended to

benefit the marital estate, and believe, therefore, that the magistrate erred by refusing to treat the entire pension as part of the marital estate. We consequently must remand the calculation of the marital portion of Bernadine's pension back to the Family Court for redetermination in light of our decision on this particular issue.

We next take up and review Ronald's further contention that the magistrate erred in deducting an allowance for future federal and state taxes that Bernadine will be expected to pay on the pension amount awarded her. The magistrate reduced the total pension amount by approximately 20 percent to account for those future taxes, bringing the value of the pension down to $563,135. Ronald asserts that the deduction for future taxes was in error because the magistrate calculated the deduction without assistance of any expert testimony or other relevant evidence pertaining to the amount of tax, if any, that might actually be imposed. We agree.

We initially note from the trial record that the testimony presented by Mark Magnus (Magnus), a pension valuation expert, did not touch on the issue of what taxes might eventually become due on Bernadine's pension. In fact, when queried on the tax implications for the pension, Magnus simply responded "I don't know. I'm not a tax person." There was no other evidence presented at trial dealing with the taxation of Bernadine's pension. In his decision however, despite the record being completely devoid of such relevant and pertinent evidence, the magistrate nevertheless chose to consider the tax ramifications and selected the 20 percent tax reduction figure, apparently as a kind of a tax middle ground between minimum and maximum tax rates that could potentially be applicable to Bernadine.

 Although a magistrate's decision to take into account tax ramifications applicable to a property distribution is committed to his or her sound discretion, *see Chace v. Finlay*, 576 A.2d 1233, 1235 (R.I. 1990), we believe, however, that sufficient evidence first must be adduced at trial to guide the magistrate in the reasoned exercise of that discretion. Without such evidence, we believe that a magistrate effectively would be operating in a judicial vacuum, dealing with complex issues beyond the ordinary ken of his or her duty and ability as a fact finder. Thus, because of the absence of any evidence in the trial record relating to the amount of any tax expected on Bernadine's pension to support the magistrate's decision, we must conclude that his decision in this regard necessarily amounted to mere speculation and constituted a clear abuse of his discretion. Accordingly, the pension tax issue also must be remanded to the Family Court for redetermination of any tax that will become due on Bernadine's pension.

## V

### The Personalty Award

Ronald next asserts that the magistrate's decision to allow the parties to retain the personal property possessed by each respectively at time of trial was erroneous. He contends that the magistrate's decision failed to take into account substantial amounts of jewelry possessed by Bernadine. Ronald argues that the magistrate's decision necessarily indicates that he did not accord any value to those items for purposes of calculating the marital estate, but rather simply treated them as *de minimis* assets. We reject Ronald's contention.

 In his decision, the magistrate held in part that "[t]he Plaintiff and the Defendant may retain the household, furniture, furnishings, and effects in the home awarded to each. All of the personalty, jewelry, furs and personal [*sic*] not mentioned by be retained [*sic*] by the possessor." As discussed above, the trial record reveals that the magistrate carefully and conscientiously applied the statutory elements set forth in § 15–5–16.1 in arriving at his decision. Although the magistrate

did not purport to expressly value each and every item constituting the above described personal property, such as Bernadine's jewelry, we believe that because he did adequately apply the pertinent statutory factors in determining the equitable distribution of the marital estate as a whole, his decision concerning this particular subset of the marital estate does not amount to clear error. "As long as this Court is able to review a lower court's decision and to determine therefrom that all the necessary facts and statutory factors were considered, we shall not require that court to explain its considerations in a particular or a single [prescribed] manner." *Gervais*, 688 A.2d at 1308. Thus, we conclude that the magistrate's decision to let the parties retain their personal property was proper, and reflects a proper exercise of his discretion and is adequately supported by the record before us.

## VI

### Adjustments in Marital Property

 Ronald also asserts that the magistrate erred by first deducting from the value he placed on the marital domicile awarded to Bernadine the amount of an outstanding mortgage of some $37,000 on that property, while simultaneously failing to also first reduce the value of the Martha's Vineyard property that was awarded to him by the amount of the outstanding liens on that property. We agree.

The trial evidence revealed that the liens on the Martha's Vineyard property resulted from Ronald's excessive credit-card purchases made during the marriage. The liens were imposed on the Martha's Vineyard property by Northwest Bank and MBNA for approximately $30,000. We note from the trial record that Ronald testified that the credit-card debt and resultant liens stemmed from "credit cards that I used when I was employed for our mutual benefit" and included rental fees and day-to-day living expenses. He further testified that he stopped using the credit cards in 1995, well before the par-

ties separated. The record is devoid of any evidence contradicting Ronald's testimony, or purporting to show that the credit card expenditures by him had not benefited the marital estate, or were somehow only of sole benefit to Ronald. The magistrate, in making the 65 percent–35 percent allocation of the marital assets, had already penalized Ronald for mismanagement of the marital estate. Accordingly, this Court must conclude that the magistrate's finding and decision to assign Ronald sole liability for the credit card debt and the resulting liens on the Martha's Vineyard property amounted to a double penalty and therefore clear error. Consequently, we also remand this issue to the Family Court with instructions to recalculate the value of the Martha's Vineyard property in light of our decision herein.

For the reasons stated above, Ronald's appeal with regard to the magistrate's calculation of the marital portion of Bernadine's pension and his allowance of a 20 percent deduction therefrom for future tax obligations is sustained. His appeal with regard to the magistrate's failure to reduce the value of the Martha's Vineyard property by the amount of the outstanding liens on that property for credit-card payment deficiencies also is sustained. Both those matters are remanded to the Family Court for redetermination and redistribution to the parties.

In all other respects, Ronald's appeal is denied, and the judgment appealed from is affirmed. The papers in this case are remanded to the Family Court for further proceedings therein in accordance with this opinion.

Justice LEDERBERG did not participate.