Athanasia KOUTROUMANOS

v.

Thomas TZEREMES.

No. 2003–267–Appeal.

Supreme Court of Rhode Island.

Feb. 7, 2005.

Robert M. Brady, East Providence, for Plaintiff.

Colleen Crudele, North Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

A husband's imprudent investment practices resulted in a credit card debt of approximately $77,000, while the investment account itself, once worth $300,000, diminished in value to only $7,700 at the time of divorce. In an award of equitable distribution, the Family Court awarded the $7,700 to the wife, and assigned the entire debt to the husband; all other assets were divided equally. The husband now challenges the Family Court order distributing the marital estate and awarding alimony and counsel fees.

The parties were invited to appear before the Supreme Court to show cause why the issues raised by this appeal should not summarily be decided. After hearing the parties' oral arguments and considering their written submissions, we are of the

opinion that cause has not been shown. We proceed, therefore, to decide the appeal at this time. For the reasons set forth herein, we affirm the Family Court order in part and vacate in part.

## Facts and Travel

Thomas Tzeremes (defendant) and Athanasia Koutroumanos (plaintiff) were married in Greece on June 19, 1994. At the time of the marriage, plaintiff was eighteen years old and a permanent resident of Greece. The defendant was twenty-eight years old and living in Massachusetts. Two children were born during their marriage.

On March 27, 2001, plaintiff filed a complaint for divorce on the ground of irreconcilable differences that caused the irremediable breakdown of the marriage. On April 16, 2001, defendant filed a counterclaim for divorce, also on the ground of irreconcilable differences. Both parties sought an assignment of the marital assets.

 The matter was reached for trial on February 15, 2002. As is apparent from the transcript, the parties wished to dissolve their marriage and had reached an agreement relative to the custody of the children. They had not, however, agreed upon the distribution of marital assets and other financial issues. The trial justice, therefore, bifurcated the divorce proceedings. After a brief hearing, he granted plaintiff's complaint and defendant's counterclaim for divorce, and he awarded joint custody, physical placement and visitation with respect to the minor children, and ordered defendant to continue to pay without prejudice $200 per week as child support.[1] The issues, however, of equitable distribution, alimony, and counsel fees were left open for a future date.[2] Subsequently, the parties jointly submitted an agreed statement of facts and each submitted a proposed division of marital assets. No further testimony was taken.

On October 15, 2002, the trial justice issued a written decision addressing the issues of equitable distribution, alimony,

---

1. By an order entered on October 23, 2002, the amount of child support was increased to $300 per week commencing June 21, 2002.

2. The decision to bifurcate issues within the context of a divorce proceeding lies within the sound discretion of the trial justice. "Bifurcation is particularly appropriate in circumstances where one party interposes delay after delay and virtually grinds the court machinery to a halt." 24 Am. Jur. 2d *Divorce and Separation* § 320 at 483 (1998). It also may be useful to separate especially contentious issues from others that may be amenable to more congenial resolution. Although we seek not to limit a trial justice's properly exercised discretion, we are of the opinion that bifurcation ought to be the exception, not the norm.

The record indicates that the case originally was scheduled for a nominal hearing on June 12, 2001, but then placed on the contested calendar. A case management conference order was entered on July 13, 2001, requiring that all discovery be completed by August 24, 2001. On October 9, 2001, a pretrial order was entered scheduling the matter for trial on November 23, 2001. Not until November 16, however, did plaintiff file motions for leave to depose defendant, to compel compliance with discovery, and to continue the trial. The matter was continued for trial to January 25, 2002, with an order that discovery be completed within thirty days. Then, even after a further continuance to February 15, 2002, the parties still were requesting an additional thirty days to complete discovery.

We recognize that there may be legitimate reasons for not completing discovery in a timely manner and for bifurcating issues at a trial, particularly within the context of an often emotionally charged divorce proceeding. We caution counsel and the court, however, that noncompliance with discovery orders is not to be lightly countenanced. We also remind the bench that the reasons for bifurcating issues at a trial should be placed on the record.

and counsel fees. An order was entered on November 7, 2002, from which defendant timely appealed.

In addressing the equitable distribution of the property, the trial justice first determined the extent of the marital estate. The trial justice found that the marital property included defendant's 50–percent interest in two pizza businesses (valued at $10,500 and $62,500), cash given to defendant's brother as a down payment for property in Massachusetts ($28,000), two vehicles, a medical insurance plan, and a 50–percent interest in commercial property (valued at $80,000) in Blackstone, Massachusetts.

The trial justice then addressed the assignment of the marital property and discussed the criteria for equitable distribution pursuant to G.L.1956 § 15–5–16.1.[3] The trial justice found that the marriage was of moderate length and that defendant was primarily responsible for the accumulation of the assets of the marriage, while plaintiff was the primary homemaker and caretaker of the children throughout the marriage. The trial justice observed that plaintiff lacked any formal education,

spoke limited English, was not a citizen of the United States, did not possess a Social Security number, and earned little income, instead working in a family-owned restaurant in exchange for housing for herself and the children. Regarding defendant's conduct during the marriage, the trial justice found that defendant pled *nolo contendere* to a charge of domestic assault and was given three years probation in 2001. In discussing the wasteful dissipation of assets, the trial justice noted that defendant had incurred $77,000 in credit card debt and that the "bulk of this debt was run up by the defendant as a result of stock transactions handled only by the defendant." At one time the parties had an investment account valued at over $300,000. The trial justice also found, however, that most of the losses were beyond the control of the parties. This account was liquidated in February 2002 for $7,700, and the proceeds paid to plaintiff to offset costs and as partial equitable distribution.

The trial justice then assigned the marital assets. Relevant to this appeal, he awarded plaintiff the $7,700 "already received by her to the exclusion of the defen-

**3.** General Laws 1956 § 15–5–16.1(a), provides as follows:

"**Assignment of property.**—(a) In addition to or in lieu of an order to pay spousal support made pursuant to a complaint for divorce, the court may assign to either the husband or wife a portion of the estate of the other. In determining the nature and value of the property, if any, to be assigned, the court after hearing the witnesses, if any, of each party shall consider the following:
(1) The length of the marriage;
(2) The conduct of the parties during the marriage;
(3) The contribution of each of the parties during the marriage in the acquisition, preservation, or appreciation in value of their respective estates;
(4) The contribution and services of either party as a homemaker;
(5) The health and age of the parties;

(6) The amount and sources of income of each of the parties;
(7) The occupation and employability of each of the parties;
(8) The opportunity of each party for future acquisition of capital assets and income;
(9) The contribution by one party to the education, training, licensure, business, or increased earning power of the other;
(10) The need of the custodial parent to occupy or own the marital residence and to use or own its household effects taking into account the best interests of the children of the marriage;
(11) Either party's wasteful dissipation of assets or any transfer or encumbrance of assets made in contemplation of divorce without fair consideration; and
(12) Any factor which the court shall expressly find to be just and proper."

dant." He also ordered defendant to indemnify and hold plaintiff harmless on the $77,000 credit card debt. The trial justice ordered defendant to pay plaintiff $90,500, which represented 50 percent of the marital value of the two pizza businesses, the commercial property, and the $28,000 down payment. If any previously undisclosed asset was discovered, it was to be awarded to each party on a fifty-fifty basis.

Next, the trial justice considered the issue of alimony. After considering the factors provided in § 15–5–16, he ordered defendant to pay the sum of $200 per week for three years as alimony. The trial justice again noted that plaintiff had little formal education, lacked citizenship, was not proficient in English, and earned no actual income, although she did receive weekly child support. Additionally, he opined that, as the prime custodian of the children—the youngest of whom was three years short of school age—plaintiff would have a difficult time seeking full-time employment. The trial justice observed that plaintiff was still young and had many productive work years ahead of her, but would need temporary assistance to overcome the above-mentioned difficulties and become self-sufficient. Furthermore, the trial justice observed that defendant had reported earnings of $55,364 in the year 2000, and thus demonstrated an ability to pay the alimony award.

The trial justice also addressed plaintiff's request for counsel fees in the amount of $20,000. He specifically acknowledged the awards to plaintiff of "$90,500 in cash as equitable distribution" and $200 per week for three years as alimony, and he said that plaintiff needed those awards to help sustain herself and the children and to assist her in the rehabilitation period. As a result, the trial justice found that plaintiff was without means to pay her counsel fees. The trial

justice found that "based on this case and its complexity, that a counsel fee in the amount of $10,000 is reasonable," and ordered defendant to contribute that amount toward counsel fees incurred by plaintiff.

The defendant raises three arguments on appeal. The defendant first argues that the trial justice erred in both calculating and assigning the marital estate. Second, defendant avers that the trial justice failed to address the tax ramifications associated with defendant's need to liquidate marital assets to pay plaintiff her share of the equitable distribution. Third, defendant asserts that the trial justice failed to make the required findings of fact necessary to sustain the award of alimony and counsel fees.

### Determination and Assignment of the Marital Assets

■ The defendant contends that the trial justice abused his discretion in first determining the value of the marital assets, and then in distributing the marital property between the parties. According to defendant, the trial justice abused his discretion in selecting plaintiff's appraisal of the Blackstone commercial property as establishing the property's value without making findings of fact. The defendant further contends that the trial justice erred in assigning to him the entire credit card debt, while awarding plaintiff the entire investment account.

■ It is well established that the equitable distribution of property is a three-step process. *Olivieri v. Olivieri*, 760 A.2d 1246, 1248 (R.I.2000) (citing *Lancellotti v. Lancellotti*, 481 A.2d 7, 10 (R.I.1984)). The trial justice first must determine which assets are marital property, then must consider the factors set forth in § 15–5–16.1(a), and finally, he or she must distribute the property. *Olivieri*, 760 A.2d at 1248 (citing *Lancellotti*, 481 A.2d at 10).

We "will not disturb findings of fact made by a trial justice or magistrate in a divorce action unless he or she has 'misconceived the relevant evidence or was otherwise clearly wrong.' " *Stephenson v. Stephenson,* 811 A.2d 1138, 1141 (R.I.2002) (quoting *DiOrio v. DiOrio,* 751 A.2d 747, 751 (R.I.2000)). Furthermore, "unless it is shown that the trial justice either improperly exercised his or her discretion or that there was an abuse thereof, this Court will not disturb the trial justice's findings." *Stephenson,* 811 A.2d at 1141 (quoting *Gormly v. Gormly,* 760 A.2d 1241, 1243 (R.I.2000)).

In the matter before us, rather than presenting evidence, the parties submitted an "Agreed Statement of Facts." The title of the document is somewhat of a misnomer because it is evident from the document itself that the parties had not in fact "agreed" upon all of the enumerated facts. One such item was a half interest in the commercial property in Blackstone, Massachusetts, that defendant and his brother had acquired in 2000. Although there was no dispute that the interest was marital, or that the property was secured by a $65,000 mortgage, the parties did not agree on its value. Paragraph 27 of the "agreed statement" provides:

> "An appraisal of the property at 2 Main Street, Blackstone, Massachusetts, conducted at the request of the Plaintiff, states a fair market value of $225,000.00. An appraisal of the same property conducted by an appraiser at the request of the Defendant indicates a fair market value of $190,000.00. Both appraisals are attached hereto and incorporated herein by reference."

A review of these appraisals reveals that they are not really appraisals at all. The plaintiff's "appraisal" is described as a "preliminary opinion of value" and contains a disclaimer that "the full appraisal process was not utilized." The defendant's letter is styled a "statement of the final estimate." The appraiser indicated that he had made "an exterior inspection of the above-referenced property for the purpose of estimating its market value," and curiously stated "that said value has been based upon a complete appraisal; the complete appraisal, although in rough form, has been prepared and retained in my files and is available to you for review should you desire." It was not made available to the trial justice.

On appeal, Mr. Tzeremes argues that he had "proposed that the [F]amily [C]ourt average the two (2) appraisals and calculate [the] value [of the property] at $200,000.00. However, the [F]amily [C]ourt instead, accepted the plaintiff's appraisal, without making any of the necessary, supporting findings of fact * * * contrary to R.I.R.Dom. Proc. 52." His argument lacks merit.

By submitting an agreed statement of facts, the parties waived their opportunity and right to present independent evidence at a trial. Moreover, they waived their right to cross-examine adversarial witnesses, including the two real estate appraisers. Thus, the only "evidence" available to the trial justice were the two estimates, neither one of which included any supporting data or documentation. It is of little moment that the trial justice failed to articulate specific findings of fact to undergird his selection of plaintiff's appraisal; the facts all were set forth in the parties' joint statement and are a part of the record.

It is well settled that a trial justice is free "to accept the opinion of one expert, while rejecting the opinion of another expert." *Sun–Lite Partnership v. Town of West Warwick,* 838 A.2d 45, 48 (R.I.2003). That is precisely what the trial justice did here. Moreover, this Court has held that

even in the event that "a trial justice fails to expressly articulate findings of fact we shall not refuse to accord the decision the persuasive force usually accorded such decisions on review, for the reason that implicit in a decision are such findings of fact necessary to support it." *Mattera v. Mattera*, 669 A.2d 538, 541 (R.I.1996) (quoting *Duke v. Duke*, 510 A.2d 430, 432 (R.I.), *cert. denied*, 479 U.S. 864, 107 S.Ct. 219, 93 L.Ed.2d 147 (1986)).

■ Turning to defendant's challenge to the trial justice's assignment of the credit card debt and the investment account, we first note that although the trial justice failed to explicitly designate the credit card debt as marital in nature, the parties, in their agreed statement of facts, characterized the debt as "marital debt * * * incurred as a result of various stock transactions," and stipulated that the investment losses were caused by "economic factors beyond the parties['] control." Moreover, in applying the statutory factors set forth in § 15–5–16.1(a), the trial justice considered the credit card debt as a wasteful dissipation of assets, and found that the bulk of the $77,000 credit card debt was incurred by defendant as a result of stock transactions handled only by defendant. The trial justice noted that defendant had lost approximately $500,000, and at one point the parties had an investment account valued at $300,000, but this account was liquidated in February 2002 for $7,700. The trial justice also found that "[m]ost of these losses, however, were beyond the control of the parties." The trial justice ordered defendant to indemnify and hold plaintiff harmless on the $77,000 debt and, conversely, awarded plaintiff the $7,700 previously held in the investment account.

■ It is well settled that "the equitable distribution of marital assets is left to the sound discretion of the trial court which is obligated to consider the factors prescribed by the Legislature in G.L.1956 § 15–5–16.1" and that as long as the trial justice "did not overlook or misconceive material evidence, and if he [or she] considered all the requisite statutory elements, this [C]ourt will not disturb the trial court's findings." *DiOrio*, 751 A.2d at 750 (quoting *Murphy v. Murphy*, 714 A.2d 576, 579–80 (R.I.1998)). Moreover, the "division of the marital property need not be equal in order to be equitable." *Altieri v. Altieri*, 711 A.2d 1145, 1146 (R.I.1998) (mem.) (citing *Cloutier v. Cloutier*, 567 A.2d 1131, 1133 (R.I.1989)). In the case before us the trial justice identified the marital assets, appropriately applied the various statutory factors, and then proceeded to assign the marital assets. He awarded to each party the personal property, including motor vehicles, currently in their respective possession. The plaintiff was awarded the sum of $7,700, which represented the liquidation proceeds of the investment account, "to the exclusion of the defendant." That money previously had been paid to plaintiff. The trial justice also ordered that "the defendant shall indemnify and hold the plaintiff harmless on the $77,000 debt which is outstanding on various credit cards." Finally, he ordered defendant to pay to plaintiff the sum of $90,500, "which represents 50% of the marital value of Harry's Pizza; Olympia Pizza; 2 Main Street, Blackstone, Massachusetts; and the $28,000 in cash that the defendant gave to his brother."

There is no question that the resulting division of marital assets was not equal. By assuming sole responsibility for the $77,000 debt, defendant received a disproportionately smaller share of the net marital estate than did plaintiff. Nevertheless, in the circumstances of this case, we are satisfied that the trial justice was acting

within his discretion when he assigned the entire debt to defendant.

We again emphasize that the parties waived their respective right to a trial, thereby depriving the trial justice of an opportunity to assess the credibility of the parties. His award necessarily was predicated upon the facts to which both parties had stipulated.

Our review of those facts supports the trial justice's findings. The parties agreed that defendant had pled *nolo contendere* to a charge of domestic assault and was then serving a three-year probationary sentence. They acknowledged that the bulk of the $77,000 debt was incurred as a result of various stock transactions "handled exclusively by the Defendant," and that he lost approximately $500,000 in those transactions. Significantly, they stipulated that defendant "took various cash advances against the credit card to acquire certain stock and for certain living expenses of the Plaintiff and children."

Moreover, the parties agreed that Ms. Koutroumanos had not obtained United States citizenship, had no formal education, and spoke "little, if any, English." She also did not have a Social Security number and was "not eligible to work on the payroll for any individual." She was, however, assisting her brother in his pizza parlor "in return for a place to live for her and her children." She also had borrowed money from her sister-in-law to pay day-to-day expenses.

In light of these agreed facts, the trial justice did not abuse his discretion by equally dividing the marital assets, yet assigning the credit card liability to defendant. Neither the parties nor the trial justice faulted defendant for losses in the investment account caused by "economic factors beyond the parties['] control." As is evident from the agreed facts, however, the "bulk" of the $77,000 debt resulted from the reckless investment practices of defendant, primarily by taking cash advances against credit cards to purchase stocks. Clearly, the trial justice considered the debt to be a wasteful dissipation of marital assets.

Moreover, it was reasonable from the facts to infer, as the trial justice did, that "[t]hroughout this marriage, the plaintiff was kept in the dark as to all of the financial matters." Clearly, she had no present ability of contributing to the continuing payment of the debt, and had virtually no means of earning a meaningful income within the immediate future.

██ Mr. Tzeremes also contends that the Family Court failed to award him "a credit for one half of the value (or a credit of any amount) of the parties' investment account." In this respect, we agree that the trial justice overlooked or misconceived relevant evidence.

In their agreed statement of facts, the parties stipulated that an investment account with Oftring & Company had been liquidated in February 2002. The liquidation proceeds were paid to plaintiff to "offset costs and as partial equitable distribution." The trial justice, however, failed to consider these proceeds in the distribution of the marital property, and simply awarded plaintiff "the sum of $7,700 already received by her to the exclusion of the defendant." In light of the trial justice's clear intent to divide the marital estate, excluding the credit card debt, on an equal basis, we believe this to be an oversight. Accordingly, we direct that the Family Court order of November 7, 2002 be amended such that defendant be given credit for one half of the liquidated investment account, or $3,850.

### Tax Ramifications

██ The defendant contends that the trial justice erred in failing to consider the

tax ramifications associated with the need to liquidate assets to pay plaintiff her share of equitable distribution. Specifically, defendant avers that the trial justice should have considered the capital gains tax defendant would incur if forced to sell property to satisfy the equitable distribution.

■ A trial justice's "decision to take into account tax [consequences] applicable to a property distribution is committed to his or her sound discretion." *DiOrio*, 751 A.2d at 752. However, "sufficient evidence first must be adduced at trial to guide the [court] in the reasoned exercise of that discretion." *Id.* The defendant failed to submit any evidence to guide the trial justice in assessing the tax implications of any property distribution. The only mention of taxes occurred in defendant's proposed equitable distribution in which he stated that the trial justice should "consider the capital gains tax that the [d]efendant will have to pay if he is forced to sell [the commercial property] in order to satisfy the equitable distribution." Such hypothetical and general statements clearly do not trigger the need to consider any tax ramifications. The defendant did not show that he would be "forced to sell" the commercial property, nor did he outline any potential tax consequences. Without such evidence, the trial justice effectively would be "operating in a judicial vacuum, dealing with complex issues beyond the ordinary ken of his or her duty and ability as a fact finder." *Id.*

### Award of Alimony and Counsel Fees

The defendant next contends that the trial justice erred in awarding plaintiff alimony and counsel fees without considering defendant's ability to pay. Furthermore, defendant avers that the trial justice erred by determining the amount of plaintiff's counsel fees on a record devoid of an affidavit supporting such fees, and by failing to conduct a hearing on whether the fees were fair and reasonable. Section 15-5-16(a) provides that the "[F]amily [C]ourt may order either of the parties to pay alimony or counsel fees, or both, to the other." Concerning alimony, § 15-5-16.1(c) provides that "[t]he assignment of property, if any, to be made shall precede the award of alimony, since the needs of each party will be affected by the assignment."

■ Similarly, although the trial justice has the authority to order one spouse to pay the counsel fees of the other, he or she first must determine that "the party from whom payment is sought has sufficient financial ability to pay such fees and that the spouse seeking payment is without property available for that purpose." *Hogan v. Hogan*, 822 A.2d 925, 929 (R.I.2003) (quoting *Becker v. Perkins–Becker*, 669 A.2d 524, 529 (R.I.1996)). Obviously, the parties' financial resources and needs are affected by the distribution of marital assets. Thus, a trial justice may reach the question of alimony and counsel fees only after assigning the marital property.

■ Here, the trial justice considered the factors that he was required to consider under § 15-5-16 in determining alimony. He weighed defendant's "reported earnings" of $55,364 against plaintiff's lack of citizenship, language barrier, and little, if any, training and formal education. He also considered plaintiff's responsibility to provide primary care for the minor children, the five- and two-year-old. The trial justice determined, nevertheless, that it was reasonable to believe that plaintiff could obtain citizenship, become more fluent in English and gain marketable skills, "if she applies herself during [the] period of time before her youngest child is of school age." He awarded her, there-

fore, alimony of $200 per week for three years. We detect no abuse of his discretion.

■ Moreover, in awarding counsel fees the trial justice specifically considered his earlier award of equitable distribution. He was well aware of the nature and value of the assets assigned to each party. He found, however, that "plaintiff needs the award of equitable distribution to help sustain herself and the children and to assist her in the rehabilitation period. She is therefore without means to pay counsel fees."

■ "It is within the trial court's discretion to determine the need and amount of counsel fees to be awarded." *Thompson v. Thompson,* 642 A.2d 1160, 1165 (R.I.1994). "[A] trial justice presiding in a divorce proceeding acts within the limits of judicial discretion in fixing the amount of attorney's fees and, absent judicial abuse, this court will not review the exercise of such discretion." *Becker,* 669 A.2d at 529 (citing *Gartner v. Gartner,* 79 R.I. 399, 408, 89 A.2d 368, 374 (1952)). "In fixing the amount of the award, the trial justice is not bound by the opinions of attorneys in regard to the value of the services rendered but should exercise his or her own independent judgment since he or she has the requisite skill and knowledge to form a reasonably correct idea of what is fair and reasonable compensation." *Id.*

Here, the record clearly indicates that the divorce action had been assigned to the trial justice for more than sixteen months, and that he had presided over the case management conference, pretrial hearing and several motions. We are satisfied, therefore, that he was very familiar with the complexity of the case and the efforts that counsel expended to protect the interests of their respective clients. In his decision the trial justice said:

"Throughout this marriage, the plaintiff was kept in the dark as to all of the financial matters. She had little knowledge of the holdings or the value of any assets of the parties. Counsel for the plaintiff was required to go to great lengths to discover the various assets of the parties and to determine the values of same."

The trial justice specifically found that "based on this case and its complexity, * * * a counsel fee in the amount of $10,000 is reasonable," and then ordered the defendant to pay said amount "as a contribution towards counsel fees incurred by [the] plaintiff," which at the time totaled $20,000. We are satisfied that the trial justice engaged in a sufficient analysis of the appropriate factors and that, in the circumstances of this case, the award of counsel fees was a sustainable exercise of his discretion.

**Conclusion**

For the reasons stated above, we vacate the Family Court order awarding the proceeds from the investment account to the plaintiff, and affirm the order in all other respects. The papers in this case are returned to the Family Court with instructions to amend the order to render it consistent with this opinion.