January 19, 2023

**Supreme Court**
No. 2020-206-Appeal.
(P 15-911)

Marnee McCollum             :

v.             :

Daniel McCollum.             :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published

Marnee McCollum      :

v.      :

Daniel McCollum.      :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Lynch Prata, for the Court.** In this case, the defendant, Daniel McCollum (Daniel), appeals from a Family Court decision pending entry of final judgment, granting both the plaintiff's, Marnee McCollum (Marnee), complaint for divorce and Daniel's counterclaim for divorce.[1] On appeal, Daniel challenges the trial justice's award of attorneys' fees to Marnee, arguing that the trial justice misapplied Connecticut law in enforcing the attorneys'-fee provision contained in the parties' postnuptial agreement and otherwise abused his discretion in awarding attorneys' fees to Marnee. For the reasons set forth herein, we affirm the decision of the trial justice and remand this case to the Family Court.

---

[1] The parties will be referred to by their first names for convenience. No disrespect is intended.

**Facts and Travel**

On June 1, 2003, Daniel and Marnee married and subsequently had two children.[2] At all relevant times, Marnee was employed by Delta Airlines as a New York-based flight attendant, where she historically earned a salary of approximately $20,000 per year. Since the birth of the parties' children, Daniel has been the family's primary financial provider.

Daniel received a Bachelor of Arts in Economics from the University of California Berkeley and a Master's of Business Administration from Columbia University. In November 2000, Daniel started a business incorporated in the Republic of Mauritius, but he no longer has any interest in the business. Thereafter, Daniel took a job working for Bank of America, where he worked for approximately four years prior to being terminated in 2007. After his termination from Bank of America, Daniel was unemployed for approximately three to five months before accepting a job with a former boss, where he worked for about a year until September 2008. It was around this time that the parties moved to Darien, Connecticut, because Daniel was preparing to begin a job located in Stamford, Connecticut. From October 2008 to December 2012, Daniel worked at Narragansett Asset Management as a consultant with an annual base salary of $125,000 plus

---

[2] In summarizing the facts of this case, we draw upon the findings made by the trial justice in his written decisions and as set forth in the record. The parties have not challenged these underlying facts.

bonuses. Daniel confirmed that two of the bonuses he received were for $50,000 and $100,000 respectively.

In May 2013, Daniel received a job offer from Brown University, with a start date of July 1, 2013. Daniel was offered a yearly salary of $350,000, with the potential to receive bonuses as well as other benefits. Marnee informed Daniel that she would not be moving with him to Rhode Island and would remain in Connecticut with their children. Marnee then hired an attorney and filed a complaint for separation in Connecticut, which was served on Daniel in July 2013.

Shortly thereafter, Marnee decided to move to Rhode Island with Daniel and their children. During the summer and fall of 2013, the parties began working together to find a private school for their children in Rhode Island. This included attending open houses and cocktail parties, contacting school officials, and researching which Rhode Island school would be the best fit for their children. In October 2013, however, Marnee amended her complaint for separation in Connecticut to a complaint for divorce. According to Marnee, she filed the amended complaint for divorce because she felt that Daniel was not invested in saving their marriage, despite Daniel's claims to the contrary. Marnee testified that she learned Daniel had been visiting websites such as match.com and Craigslist to search for massages and dates with women. In fact, Daniel testified that he had been unfaithful to Marnee during this time. Despite this discovery, however, Marnee subsequently

filed for reconciliation status in Connecticut on November 15, 2013, and the Connecticut divorce proceedings were placed on hold.

On March 31, 2014, the parties purchased a home in Cranston, Rhode Island, for approximately $865,000. Marnee and the children visited Rhode Island on the weekends before moving into the house on June 27, 2014, at the conclusion of the children's school year in Connecticut. In the spring of 2014, the parties began making payments to the Gordon School, located in Rhode Island, in anticipation of the children's attendance in September 2014. Over the summer of 2014, however, Marnee had obtained a one-year lease from the parties' previous landlord in Connecticut without informing Daniel. At this time, the children were enrolled at the Gordon School, with the parties having paid approximately $30,000 in tuition and committing to pay the full amount of approximately $70,000. In early September 2014, Marnee informed Daniel that she was leaving Rhode Island and taking the children back to Connecticut to live in their old home. Daniel was unaware that Marnee had been paying rent that summer for the home in Connecticut. Marnee, however, did not move the children back to Connecticut immediately, and the children attended orientation at the Gordon School.

The children attended their first day of school at the Gordon School on September 3, 2014. However, later that same day, unbeknownst to Daniel, Marnee took the children from Rhode Island and drove to a hotel in Westport, Connecticut.

- 4 -

Consequently, the children did not attend school on September 4 or September 5, 2014. On September 5, 2014, the parties entered into a stipulation in the Connecticut divorce proceeding, requiring Marnee to return the children to the parties' residence in Rhode Island on Sunday, September 7, 2014, and for the children to return to the Gordon School on Monday, September 8, 2014. In accordance therewith, the children attended the Gordon School on that Monday and Tuesday. However, the children did not attend on Wednesday, September 10, 2014. Instead, that morning, Marnee left Rhode Island with the children again, without informing Daniel, and enrolled them at the Rogers School in Connecticut.

The next day, the parties engaged in a contested emergency hearing in the Judicial District of Stamford/Norwalk, Connecticut. The parties engaged a mediator in an attempt to resolve their dispute, resulting in the parties executing an extensive Post-Nuptial Agreement (the PNA) on December 31, 2014, and Marnee dismissing the Connecticut divorce proceedings.[3] The PNA was designed to resolve the previous pending divorce action and to attempt to restore marital relations between the parties. However, Marnee eventually filed a complaint for divorce in Rhode

---

[3] The dispute between the parties at this time was not limited to Marnee moving back and forth between Rhode Island and Connecticut. During the time the parties were litigating in Connecticut, Daniel testified to maintaining a sexual relationship with a woman he met on a dating website *after* Marnee filed for separation and *before* the parties executed the PNA. Further, in November 2014, Daniel threatened to kill himself apparently as a tactic to get the parties' children to move to Rhode Island.

Island on May 20, 2015, after apparently learning that Daniel had spent the evening with a woman and had been staying at the woman's house when her husband was not present.

After Marnee filed the complaint for divorce in Rhode Island, the parties engaged in years of litigation. Despite executing the PNA, the parties contentiously litigated a wide variety of issues relating to their marriage and children over a period of approximately five years.[4] On December 10, 2018, the trial justice issued a written decision pursuant to Rule 54(b) of the Family Court Rules of Domestic Relations Procedure, finding that the PNA, as well as its financial terms and conditions, was valid and enforceable under both Connecticut and Rhode Island law.[5] However, that decision did not address issues relating to the children, certain financial consequences as outlined in the PNA, and attorneys' and expert fees. Approximately one year later on December 17, 2019, the trial justice issued a sixty-six-page decision addressing these remaining issues.[6]

---

[4] In fact, during the pendency of the instant appeal, the parties requested that this matter be remanded to the Family Court several times to address remaining issues such as, among other things, ongoing compliance with visitation orders and the payment of current expenses and support.

[5] The PNA contains a valid Connecticut choice-of-law provision, which neither party challenges. Moreover, neither party appealed from the trial justice's Rule 54(b) decision that the PNA was valid and enforceable.

[6] It was represented at oral argument that neither party currently lives in Rhode Island and that the parties are presently engaged in litigation in Connecticut relative to the children and outstanding financial issues. While these issues are not the

As to attorneys' fees, the trial justice found that Marnee was entitled to reasonable attorneys' fees pursuant to the PNA's fee-shifting provision, as well as G.L. 1956 § 15-5-16. With respect to the PNA, § 10(h) specifically states that:

> "If either of us fails to comply with his or her obligations hereunder or otherwise breaches this Agreement, or if any legal action or other proceeding is instituted to challenge, enforce or interpret this Agreement, the prevailing party will be entitled to recover from the non-prevailing party, all costs incurred prior to the suit of action or out of court settlement, in that action or proceeding or any appeal thereof, in additional [*sic*] to any other relief to which the party may be entitled. Attorneys' fees include legal assistant fees, investigative fees, administrative costs, and other charges paid to the attorney by the prevailing party."

The trial justice explained that, because Daniel challenged the enforceability of the PNA and did not prevail, Marnee, as the prevailing party, was entitled to an award of fees pursuant to § 10(h). Relative to the statute, § 15-5-16 provides that the "[F]amily [C]ourt may order either of the parties to pay alimony or counsel fees, or both, to the other" and, in determining the amount, the court must consider: (1) "[t]he length of the marriage"; (2) "[t]he conduct of the parties during the marriage"; (3) "[t]he health, age, station, occupation, amount and source of income, vocational skills, and employability of the parties"; and (4) "[t]he state and the liabilities and needs of each of the parties." After considering these factors, the trial justice

---

subject of the instant appeal, the lengthy and contentious nature of this divorce proceeding is noteworthy in the context of discussing legal fees.

determined that Marnee was entitled to attorneys' fees.[7]  Thus, pursuant to both the PNA and § 15-5-16, the trial justice awarded Marnee attorneys' fees and costs.

An amended decision pending entry of final judgment was entered on March 10, 2020, which contained, among other things, Marnee's entitlement to attorneys' fees.  Specifically, Daniel was ordered to pay Marnee's "attorneys fees which include legal assistant fees, investigative fees, administrative costs, and other charges paid to the attorney[,]" but the trial justice did not specify an exact amount.  Thereafter, Daniel filed a timely notice of appeal, challenging the award of fees to Marnee.

### Standard of Review

"This Court has long adhered to the 'American rule' that 'requires each litigant to pay its own attorney's fees absent statutory authority or contractual liability.'" *America Condominium Association, Inc. v. Mardo*, 140 A.3d 106, 115 (R.I. 2016) (quoting *Moore v. Ballard*, 914 A.2d 487, 489 (R.I. 2007)).  "We have repeatedly stated that, in conducting a review of a trial justice's award of

[7] The record is replete with factual findings made by the trial justice relating to these factors, particularly the parties' conduct during the marriage.  For example, the trial justice acknowledged in his decision that Daniel admitted there were phone numbers of escorts, massage therapists, and prostitutes that appeared on his phone.  The trial justice also noted that Daniel created a match.com profile in August 2013, which he used to meet a women with whom Daniel had sexual intercourse while married to Marnee.  Finally, the trial justice acknowledged that in November 2015, Daniel wrote a suicide note addressed to the parties' children, which ultimately resulted in his hospitalization.  Numerous motions were filed to deal with these and other issues.

attorneys' fees, 'the issue of whether there exists a *basis* for awarding attorneys' fees generally is legal in nature, and therefore our review of such a ruling is *de novo*.'" *Id*. (brackets omitted) (quoting *Dauray v. Mee*, 109 A.3d 832, 845 (R.I. 2015)). "Accordingly, we have further stated that 'only if it is determined that there is such a legal basis, then this Court will review a motion justice's actual award of attorneys' fees for an abuse of discretion.'" *Id*. (brackets omitted) (quoting *Dauray*, 109 A.3d at 845).

## Discussion

On appeal, Daniel challenges the trial justice's decision to award Marnee attorneys' fees on two points: (1) that the trial justice misapplied Connecticut law in enforcing the "no-contest" provision contained in the PNA; and (2) that the trial justice abused his discretion in awarding attorneys' fees to Marnee by overlooking several important factors which, according to Daniel, should have been considered to determine each party's respective responsibility towards attorneys' fees and costs. As to the former, Daniel contends that the trial justice erred in enforcing the fee-shifting provision contained in the PNA, arguing that the provision is a no-contest provision. According to Daniel, no-contest provisions are disfavored under Connecticut law, especially when a contest is initiated in good faith and with reasonable justification. Daniel argues that his challenge to the PNA was in good

- 9 -

faith and with reasonable justification and, thus, the trial justice erred in enforcing the PNA's no-contest fee-shifting provision.

Marnee, however, argues that Daniel's position fails because the provision in question is a prevailing-party fee-shifting provision, rather than a no-contest provision. Marnee contends that the PNA's fee-shifting provision is not like a no-contest provision wherein a party forfeits their rights, usually to an inheritance, by simply contesting the source of those rights, such as a will. Instead, according to Marnee, the PNA's fee-shifting provision is a straightforward prevailing-party fee-shifting provision, which entitles the prevailing party to recover his or her attorneys' fees, as defined in the PNA, in the event "any legal action or other proceeding is instituted to challenge, enforce or interpret" the PNA. Therefore, because the trial justice found Marnee to have prevailed in the litigation, Marnee maintains that the trial justice did not err in ordering Daniel to pay Marnee's attorneys' fees and costs pursuant to § 10(h).

At the outset, we note that the trial justice determined that the PNA was valid and enforceable, a Rule 54(b) judgment entered, and no appeal was taken therefrom. Further, the PNA's fee-shifting provision must be construed in accordance with Connecticut law in light of the PNA's Connecticut choice-of-law provision.[8]

---

[8] The PNA's Connecticut choice-of-law clause provides that "the validity, construction, and enforcement of, and the remedies under, this Agreement are governed in accordance with the laws of the State of Connecticut * * *."

The Supreme Court of Connecticut has made clear that, in interpreting a contract, "[t]he language used in a contract must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract[.]" *Afkari-Ahmadi v. Fotovat-Ahmadi*, 985 A.2d 319, 324 (Conn. 2009) (brackets omitted) (quoting *Eckert v. Eckert*, 941 A.2d 301, 305 (Conn. 2008)). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Id.* (quoting *Eckert*, 941 A.2d at 305). "Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *Id.* (quoting *Eckert*, 941 A.2d at 305). "Finally, in construing contracts, we give effect to all the language included therein, as the law of contract interpretation * * * militates against interpreting a contract in a way that renders a provision superfluous." *Id.* (quoting *Isham v. Isham*, 972 A.2d 228, 236 (Conn. 2009)). Thus, "when interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." *Id.* (brackets omitted) (quoting *Office of Labor Relations v. New England Health Care Employees Union, District 1199, AFL-CIO*, 951 A.2d 1249, 1254-55 (Conn. 2008)). While no-contest provisions are generally considered valid under Connecticut law,

- 11 -

such clauses are "disfavored by the courts and thus must be construed strictly to prevent forfeiture." *Salce v. Cardello*, 269 A.3d 889, 895 (Conn. App. Ct. 2022).

Applying these contract construction principles to the PNA, it is clear that § 10(h) is a prevailing-party fee-shifting provision which provides a sufficient basis for an award of attorneys' fees and costs. This is not a no-contest provision, as argued by Daniel, because he is not forfeiting or otherwise being sanctioned for challenging the PNA by paying Marnee's attorneys' fees. Daniel challenged the enforceability of the PNA and did not prevail. Thus, the trial justice properly determined that Daniel was responsible for paying the reasonable attorneys' fees incurred by Marnee associated with challenging the enforceability of the PNA as required by § 10(h).

Daniel next argues that the trial justice abused his discretion in awarding attorneys' fees to Marnee by overlooking several factors that should have been considered in determining each party's respective responsibility towards attorneys' fees and costs. More specifically, Daniel contends that he should not be responsible for the fees associated with Marnee's failed attempt to enforce the PNA's financial penalty provisions in light of the trial justice's finding that those provisions violated public policy and were unenforceable. Further, Daniel argues that the trial justice awarded Marnee attorneys' fees for the entire litigation and did not differentiate between fees incurred by Marnee in enforcing the PNA from fees incurred by

- 12 -

Marnee in litigating child-related issues. Finally, Daniel avers that he should not be responsible for the fees resulting from Marnee's failed relationships with her attorneys throughout the litigation and that the trial justice's failure to consider this as part of his attorneys' fees determination was an abuse of discretion.

Section 15-5-16 provides the Family Court with the ability to order either of the parties to a divorce action to pay alimony or counsel fees, or both, to the other. *See* § 15-5-16(a). Specifically, § 15-5-16(a) states that "[i]n granting any petition for divorce, divorce from bed and board, or relief without the commencement of divorce proceedings, the family court may order either of the parties to pay alimony or counsel fees, or both, to the other." *Id*. Although the PNA contains a clause requiring the application of Connecticut law to the PNA, the parties' divorce was filed and heard in Rhode Island and is thus subject to Rhode Island law. Therefore, Daniel's contention that the trial justice was obligated to analyze the award of attorneys' fees under Connecticut law is unpersuasive. A careful review of this record makes clear the contentious nature of this divorce proceeding. There was obvious acrimony between the parties relative to both finances and the welfare of the children. While this was neither party's finest hour, the trial justice made numerous findings of fact in accordance with § 15-5-16(b) to justify an award of fees to Marnee. *See, e.g.*, *Saltzman v. Saltzman*, 218 A.3d 551, 560 (R.I. 2019) ("The award of counsel fees in a divorce action is governed by § 15-5-16.") (brackets

omitted) (quoting *Meyer v. Meyer*, 68 A.3d 571, 586 (R.I. 2013)); *Wu-Carter v. Carter*, 179 A.3d 711, 722 (R.I. 2018) (noting that § 15-5-16(b) "sets forth certain factors that a trial justice is required to consider in deciding whether, and in what amount, to order one spouse to pay counsel fees to the other"); *Koutroumanos v. Tzeremes*, 865 A.2d 1091, 1101 (R.I. 2005) (affirming a trial justice's award of attorneys' fees pursuant to § 15-5-16 because "the trial justice engaged in a sufficient analysis of the appropriate factors and * * * the award of counsel fees was a sustainable exercise of his discretion"). Specifically, the trial justice found that the parties had been engaged in a sixteen-year marriage; Daniel, who had both undergraduate and graduate degrees, was the primary financial provider for the family, earning approximately $500,000 annually with the opportunity for bonuses, while Marnee made approximately $20,000 per year; and Daniel and Marnee were both in their forties and of good health. The trial justice also made numerous factual findings with respect to the parties' conduct during the marriage and noted that much of Daniel's testimony was not credible. This included the trial justice finding that Daniel was lacking in candor and attempted to conceal bonuses and additional funds that he had received to preclude Marnee from making a claim thereto. Thus, the record amply supports an award of attorneys' fees in favor of Marnee pursuant to § 15-5-16.

- 14 -

After considering the factors enumerated in § 15-5-16(b), as well as § 10(h) of the PNA, the trial justice determined that Daniel was responsible for the reasonable attorneys' fees incurred by Marnee associated with challenging the enforceability of the PNA. The trial justice also concluded that Marnee was entitled to "all costs incurred prior to the suit of action or out of court settlement, in that action or proceeding or any appeal thereof, in addition to any other relief to which the party may be entitled." Outside of ordering Daniel to pay these costs, however, the trial justice did not identify an exact amount of fees to be awarded to Marnee or make a determination as to whether the amounts to be awarded to Marnee were reasonable in accordance with the procedures set forth in *Tri-Town Construction Company, Inc. v. Commerce Park Associates 12, LLC*, 139 A.3d 480 (R.I. 2016). *See Tri-Town Construction Company, Inc.*, 139 A.3d at 480 (requiring affidavits or expert testimony "from counsel who is a member of the Rhode Island Bar and who is not representing the parties to the action * * *").

It is well settled that in a Family Court divorce proceeding, the decision pending entry of final judgment is the appealable judgment. *See, e.g.*, *Palin v. Palin*, 41 A.3d 248, 254 (R.I. 2012) ("We consistently have held that a decision pending entry of final judgment of divorce is appealable pursuant to Rule 4(a)."); *Thompson v. Thompson*, 973 A.2d 499, 505 (R.I. 2009) (hearing appeal from amended decision pending entry of final judgment); *see also* G.L. 1956 § 14-1-52(a)

- 15 -

("A decision granting a divorce shall be appealable upon entry and * * * the correctness of the decision shall not be reviewable upon an appeal from a final decree for divorce entered in pursuance of § 15-5-23."). Upon the issuance of a decision pending entry of final judgment, a party must appeal within twenty days in order to properly challenge the findings, rulings, and orders memorialized in the decision pending entry of final judgment. *See, e.g.*, *de Bont v. de Bont*, 826 A.2d 968, 970 (R.I. 2003) (noting that, pursuant to Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure, appeal deadline was "twenty days after the decision pending entry of final judgment was entered"); *Craveiro v. Craveiro*, 773 A.2d 896, 898 (R.I. 2001) (explaining that "[a] party who contests a divorce must file his or her appeal within twenty days of the decision pending entry of final judgment").

In the instant case, Daniel followed the appropriate appellate procedure and timely appealed the issue of attorneys' fees from the March 10, 2020 amended decision pending entry of final judgment. However, although the amended decision pending entry of final judgment directed that Marnee was entitled to an award of attorneys' fees pursuant to the PNA and § 15-5-16, it did not award any specific amount because the trial justice had not yet conducted hearings or considered evidence related thereto. Such a hearing is necessary to determine the amount of attorneys' fees to which Marnee is entitled, as well as whether such fees are reasonable. *See Tri-Town Construction Company, Inc.*, 139 A.3d at 479-80.

- 16 -

For the reasons stated herein, we hold that the trial justice did not abuse his discretion in awarding Marnee attorneys' fees and costs as he had both a statutory and contractual basis to do so. Accordingly, this matter shall be remanded to the Family Court for a determination of the amount of attorneys' fees to be awarded to Marnee. The determination of any remaining financial issues pending in the Rhode Island Family Court shall be left to the discretion of the trial justice.

## Conclusion

For the foregoing reasons, we affirm the decision of the trial justice and remand this matter to the Family Court for further proceedings consistent with this opinion. The record shall be returned to the Family Court.



.STATE OF RHODE ISLAND

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Marnee McCollum v. Daniel McCollum. |
| **Case Number** | No. 2020-206-Appeal.<br>(P 15-911) |
| **Date Opinion Filed** | January 19, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice Felix E. Gill |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Lauren E. Jones, Esq.<br>For Defendant:<br><br>Jerome V. Sweeney, III, Esq. |